**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Floyd Bennett THORNTON,**
**Defendant–Appellant.**

**No. 93–30145.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1994.

Decided May 6, 1994.

Kelly R. Beckley, Eugene, OR, for defendant-appellant Floyd Bennett Thornton.

Kirk A. Engdall, Asst. U.S. Atty., Eugene, OR, for plaintiff-appellee U.S.

Before: BROWNING, KOZINSKI and NOONAN, Circuit Judges.

Per Curiam.

PER CURIAM.

An elderly Arizona man was robbed and murdered in his home on July 9, 1991. The killer tied up the victim's companion and fled in the victim's car. PSR 5. Floyd Thornton was arrested in Oregon twelve days later with the murder weapon in his pocket and the stolen car nearby, where he had crashed it. PSR 4.

Five months later, Thornton was indicted for being a felon in possession of a firearm and for possessing a sawed-off shotgun. ER 1–4. In a written plea agreement, *see* ER 6, the government agreed to recommend both a sentence at the low end of the guideline range and a two level credit for acceptance of responsibility, while also confirming that Arizona would not seek the death penalty, recommend enhancements or ask for a high-end sentence. In turn, Thornton pled guilty to the felon-in-possession charge and the state murder charge. After the plea was entered, the district judge sentenced Thornton to life imprisonment, a term consistent with the presentence report. PSR 13.

## I

**A.** In light of his sentence—which he claims was far tougher than he expected—Thornton complains that he should have been allowed to withdraw his guilty plea. But even if Thornton's attorney and the parties didn't realize the guidelines allowed a life sentence, an attorney's incorrect prediction does not, in and of itself, justify withdrawing a plea. *See, e.g., United States v. Oliveros–Orosco,* 942 F.2d 644, 646 (9th Cir.1991). Moreover, Thornton acknowledged the possibility of a life sentence during the district court's comprehensive plea hearing. ER 11.

The court also properly denied Thornton's motion to enforce his interpretation of the plea agreement, which would have limited the sentence to 188–235 months. The government did not include this sentencing range in the statement of the plea bargain, ER 6, nor was the sentence mentioned at Thornton's plea hearing. ER 7–18. Moreover, even if the parties had agreed to this sentence, they could not bind the district court. *See* Fed.R.Crim.P. 11(e)(1)(B). When a court rejects a plea agreement, the defendant's recourse is to withdraw the plea, not to have his interpretation of it enforced. *See* Fed.R.Crim.P. 11(e)(4).

**B.** Thornton points to his counsel's predictions regarding the projected sentence to establish ineffective assistance of counsel. To do so, Thornton must show this advice fell below an objective standard of reasonableness and that it was prejudicial—"that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985). Thornton can't show this. After all, the district

judge advised him that a life sentence was possible, ER 11, thus rendering any advice given by Thornton's counsel, even if erroneous, non-prejudicial.

## II

**A.** We turn to the sentence itself. Thornton first argues that the district court erred in failing to accord him certain constitutional protections during sentencing, such as a jury trial, effective assistance of counsel and proof beyond a reasonable doubt.

"Not all of the procedural protections available in the guilt phase of a trial are necessary components of a sentencing hearing." *United States v. Humphries,* 961 F.2d 1421, 1422 (9th Cir.1992). Moreover, even though sentencing only requires proof by a preponderance, *United States v. Restrepo,* 946 F.2d 654, 661 (9th Cir.1991) (en banc), the court said it would have concluded that Thornton committed the murder even under the reasonable doubt standard, ER 418.

**B.** Thornton also claims the district court erred in applying the Armed Career Criminal Act to him because this provision only applies to those who committed three or more felonies. According to Thornton, two of his burglaries do not represent separate incidents because they involved the same residence. PSR 11–12. We are not persuaded. These burglaries were "committed on occasions different from one another" as required by 18 U.S.C. § 924(e)(1) because they were twelve days apart. PSR 12; *see United States v. Antonie,* 953 F.2d 496 (9th Cir.1991) (two robberies occurring forty minutes apart in different cities satisfy "different from one another" requirement); *United States v. Wicks,* 833 F.2d 192 (9th Cir.1987) (two burglaries on the same night at different locations, which were prosecuted together and resulted in concurrent sentences, were separate offenses for purposes of Armed Career Criminal Act).

**C.** To establish Thornton's offense level under section 4B1.4, the court had to pick the greatest of the levels provided by: 1) the offense level Thornton would get under Chapters Two and Three; 2) section 4B1.1 if applicable; or 3) either 33 or 34, depending on whether he used the firearm "in connection with a crime of violence." U.S.S.G. § 4B1.4(b) (Nov.1990).

In calculating the offense level Thornton would get under Chapter Two, the district court properly determined that Thornton committed his offense—possessing a firearm as a felon—"in connection with commission or attempted commission of another offense," U.S.S.G. § 2K2.1(c)(2) (Nov.1990), namely the Arizona murder. The gun Thornton possessed is the one he used in the murder. PSR 8. Defendant was found with the gun in his pocket, near where he had left the car he had stolen from his victim. ER 348–352. This constitutes a sufficiently tight "connection" between the murder and the possession, even though Thornton wasn't actually caught with the gun until twelve days after the murder and in another state. The record supports the conclusion that Thornton's possession on the day he was caught—the day for which he was charged with possessing the gun—was continuous with possession at the time of the murder. *Cf. United States v. Horodner,* 993 F.2d 191, 193 (9th Cir.1993) (possession is a "course of conduct, not an act") (citing *United States v. Jones,* 533 F.2d 1387, 1391 (6th Cir.1976)).

**D.** Though the court correctly determined that section 2K2.1(c)(2) applied to Thornton, it then took a wrong turn. The philosophy of section 2K2.1(c)(2) is to punish a felon who possesses a firearm in connection with a crime of violence as if he'd committed an attempt of that crime of violence. To that end, section 2K2.1(c)(2) cross references to section 2X1.1, which gives the offense level for attempts. Under the 1990 Guidelines, then, a felon who possesses a firearm in connection with committing murder may be punished as if he committed attempted murder.[1] For Thornton, who was in this situation, we cross-reference from section

---

1. In contrast, the 1991 Guidelines make special provision for where death resulted. In such cases, the felon is punished as if he'd committed homicide, not attempted homicide. *See* U.S.S.G. § 2K2.1(c)(1)(B) (Nov.1991). Because this case is governed by the 1990 Guidelines, this provision is inapplicable.

2K2.1(c)(2) to section 2X1.1 to get the penalty for attempted murder.

Section 2X1.1(a) provides the base level appropriate for the completed version of the offense, which can be adjusted as an attempt under section 2X1.1(b)(1) where no specific guideline section covers the attempted crime. Section 2X1.1(c), on the other hand, applies "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section." The district court applied the base offense for murder under (a) and stopped there. But both subsections (a) and (c) deal with attempts and, of the two, the district court should have used section 2X1.1(c), since attempted murder is expressly covered by its own guideline provision: section 2A2.1. Because this leads to a lower sentence than that imposed by the district court, we must vacate the sentence and remand for resentencing.

**AFFIRMED** in part, **REVERSED** and **REMANDED** in part.