**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael Leroy BARNES, and Cheryl**
**Barnes, Defendants–Appellants.**

Nos. 94–2237, 94–2496.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 6, 1995.

Decided May 20, 1996.

Melanie C. Conour (argued) and Cale J. Bradford, Office of the United States Attorney, Indianapolis, IN, for plaintiff–appellee.

Kenneth P. Tableman (argued), Kenneth P. Tableman, P.C., Lansing, MI and Suzanne Philbrick (argued), Chesterton, IN, for defendants–appellants.

Before CUDAHY, FLAUM, and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

These consolidated appeals raise questions about the prerequisites for and consequences of guilty pleas controlled by Rule 11 of the Federal Rules of Criminal Procedure. Michael and Cheryl Barnes, husband and wife, each pleaded guilty to federal drug offenses after plea bargaining with the government. Mr. Barnes contends that his plea should be vacated because neither his lawyer, nor the prosecutor nor the judge warned him before his plea about the chief burden of his bargain—that he would be sentenced as a career offender under the sentencing guidelines. Ms. Barnes does not dispute the validity of her plea, but she does protest its sentencing consequences. She thinks that the district court erred in imposing the sentence for which she bargained. That sentence is more severe than the sentence prescribed by the guidelines, and she thinks that the terms of a plea agreement can never supersede the prescriptions of the guidelines. For the reasons discussed below, we affirm the rulings of the district court.

I.

While Michael Barnes was imprisoned in the United States Penitentiary in Terre Haute, Indiana, he sold heroin to his fellow inmates, and he used the prison telephone to arrange heroin sales outside of the prison walls. Cheryl Barnes was his agent in the outside world, making sales in Maryland and Indiana. Officials of the Drug Enforcement Agency and the Baltimore city police used a sting operation to catch the Barneses in plan-

ning—but not completing—a heroin sale. After arresting Ms. Barnes, the government obtained a search warrant for her apartment where they discovered a kilogram of cocaine and a gun.

The United States indicted the Barneses in Indiana on charges of conspiracy to sell heroin, and it indicted Ms. Barnes in Maryland on a charge of cocaine possession, holding firearms charges in reserve. The indictment against Ms. Barnes was transferred to Indiana, and on January 25, 1994, she and her husband faced trial there in the district court. The trial ended the next day when the court granted a defense motion for a mistrial.

A new trial began on January 31, and, on its first day, after the jury had been selected, the Barneses both entered into plea agreements with the government. According to Mr. Barnes' plea agreement, he would plead guilty to the conspiracy charge and receive the sentence prescribed by the sentencing guidelines. Ms. Barnes agreed to plead guilty to the conspiracy and cocaine possession charges. In return, the government agreed to recommend concurrent sentences of eight years on each charge and to relinquish its right to prosecute her for the illegal possession of a firearm.

The district court immediately held change of plea hearings for Mr. and Ms. Barnes. At Mr. Barnes' hearing, the court informed him that the statutorily defined maximum sentence for his offense was life imprisonment, and it reminded him that he would be sentenced according to the guidelines. It also told him that he would be bound to his plea regardless of how the guidelines calculated his sentence. Mr. Barnes asserted that he understood the consequences of his plea, and he then asked the court and the prosecutor about the factors that would determine his sentence under the guidelines. He speculated that the relevant factors would give him a base offense level of 16 and a criminal history score of VI. Both the court and the prosecutor refused to confirm Mr. Barnes' speculation, pointing out that they did not have all of the information required to calculate his sentence under the guidelines. Mr. Barnes' attorney posited that he was certain that Mr. Barnes was correct in his estimate. Mr. Barnes then went forward with his plea.

At Ms. Barnes' change of plea hearing, the court informed her that the controlling statutes provided for minimum sentences of five and ten years on the respective charges and for maximum sentences of life imprisonment. It also told her about what would happen at her sentencing hearing if she entered her plea. At the sentencing stage, the court would consider whether the two concurrent eight-year sentences prescribed by the plea agreement were a fair punishment. If the court found that they were, it would accept the plea and the two sentences; if it found that they were not, it would reject both the plea and the sentence, sending her and the government back to the bargaining table. The court told her that in no event would she receive more than two concurrent eight-year sentences. Professing her understanding, she also went ahead with her plea.

The Barneses' complaints about their plea agreements arose when they discovered the extent of the sentences that they would face. From the presentence report, the district court learned that Mr. Barnes qualified as a career offender. This status meant that his base offense level was 34, not 16 as he had estimated. With a base offense level of 16, Mr. Barnes' sentence would have been between 46 and 57 months; with an offense level of 34, it was between 262 and 327 months. When Mr. Barnes learned of this change at his sentencing hearing, he sought to withdraw his plea, but the district court denied his request. After the court reduced his offense level by two levels because he accepted responsibility for his crime, it sentenced him to 210 months in prison and to six years of supervised release.

Ms. Barnes tried to modify her plea agreement when she discovered that her sentence would be fixed at eight years. According to her attorney, she had entered the agreement on the assumption that the eight-year prison term was a maximum and that the court could depart downward from that level if the guidelines provided for a lesser sentence. When she learned that this assumption was erroneous, she refused to sign the plea agreement, and she complained to the dis-

trict court about the length of her sentence. She did not, however, want to withdraw her guilty plea to the conspiracy and cocaine possession charges. After considering this complaint, the district court reviewed the transcript of the change of plea hearing and decided that Ms. Barnes was bound by all of the terms of her plea agreement. Therefore, it imposed the concurrent eight-year sentences.

These sentencing decisions by the district court led to the Barneses' appeals.

## II.

Michael Barnes finds two reasons why the district court should have allowed him to withdraw his guilty plea. First, he argues that his plea was invalid because neither he, nor the prosecutor nor the court knew at the time of the plea colloquy that he would be sentenced as a career offender. Barnes believes that the parties' ignorance of this fact created a mutual mistake that voided his plea agreement. Second, he contends that his plea is invalid because his own counsel provided him ineffective assistance by offering him an inaccurate prediction of his sentence before the change of plea hearing.

## A.

The first question is whether a mutual mistake undermined Mr. Barnes' plea agreement. Interestingly, Mr. Barnes derives his argument on this point from the principles of contract law. He characterizes the sentencing consequences of his plea bargain as essential terms of his agreement with the government. If they are essential terms, the government, the defendant and the court must have a reasonably accurate knowledge of them before going forward with a guilty plea governed by Federal Rule of Criminal Procedure 11.

■ Plea agreements are governed by ordinary contract principles. *See United States v. Ingram,* 979 F.2d 1179, 1184 (7th Cir.1992), *cert. denied,* 507 U.S. 997, 113 S.Ct. 1616, 123 L.Ed.2d 176 (1993). At least in theory, ambiguity in an essential term or a mutual mistake about the meaning of such a term can invalidate it. *See id.; United States v. Atkinson,* 979 F.2d 1219, 1222–23 (7th Cir.1992). When the government proposes a plea agreement, when the defendant accepts it and when the district court enforces it, there must be a meeting of minds on all of its essential terms. *See* Fed. R.Crim.P. 11; *see also Santobello v. New York,* 404 U.S. 257, 260–63, 92 S.Ct. 495, 497–99, 30 L.Ed.2d 427 (1971). The nature of the charge to which the defendant pleads, the factual basis for the plea and the limits of the district court's sentencing authority provide the essential parameters of all guilty pleas. *See Santobello,* 404 U.S. at 260–63, 92 S.Ct. at 497–99; *see also North Carolina v. Alford,* 400 U.S. 25, 34–39, 91 S.Ct. 160, 165–68, 27 L.Ed.2d 162 (1970). These factors determine the nature and severity of a defendant's culpability, which, in turn, is the subject of the agreement between the government and the defendant.

■ The precise nature of the punishment that will be imposed after a plea is effected is not always an essential term of the plea agreement. Although punishment is related to culpability, punishment itself is not a subject of every plea agreement. In some situations, of course, it can be. When the government and a defendant enter into a plea agreement under Federal Rule of Criminal Procedure 11(e)(1)(C), the punishment is specified as an essential term of the agreement because the guilty plea is exchanged for the imposition of a specific sentence, and the district court that enforces the agreement is bound by this term. *See United States v. Bennett,* 990 F.2d 998, 1002 (7th Cir.1993).

■ On the other hand, when the government and a defendant agree on a guilty plea regulated by Rule 11(e)(1)(B), the punishment is not an essential term of the plea agreement. The agreement is complete when the parties agree on the nature and extent of the defendant's culpability. They leave the determination of a sentence to the discretion of the district court, as guided by the sentencing guidelines and by the applicable criminal statutes. *See Bennett,* 990 F.2d at 1001. A proper plea colloquy informs the defendant of the contingent nature of the

sentence. *See* Fed.R.Crim.P. 11(e)(3). Thus, the defendants in many criminal cases can enter into valid plea agreements, and district courts can enforce them, without the parties' knowing in advance exactly what sentence the court will impose.

In Mr. Barnes' case, the record shows that the government, the defendant and the district court all agreed about the essential terms of the plea bargain before it became final. Because his plea agreement fell under Rule 11(e)(1)(B), the nature of the punishment was not an essential term of that agreement. When Mr. Barnes pleaded guilty, he knew the nature of the charge against him, he confirmed the facts on which the charge was based, he knew that the court could sentence him to life imprisonment and he knew that his sentence would be determined by the application of the guidelines to facts revealed by a presentence report. The government and the district court adequately informed him about the nature and the extent of the culpability that he admitted in the plea agreement. Moreover, they specifically informed him about the contingent nature of his sentence, and they told him that his plea would be final regardless of what his sentence was. This is more than enough to avoid a mutual mistake.

### B.

█ Mr. Barnes contends that his ignorance of the sentencing consequences of his plea undermines that plea in another way. He believes that his trial counsel is responsible for his ignorance by failing to discover and analyze all of the facts that would affect the district court's sentencing decision. He argues that a reasonably competent counsel would have predicted that he would be sentenced as a career offender as a result of his guilty plea and that this prediction was a necessary prerequisite for a valid guilty plea.

█ Mr. Barnes raises this argument for the first time on appeal. Ordinarily, we will not take jurisdiction of a claim of ineffective assistance unless the appellant has, as is usually not the case, raised the issue at trial. *United States v. Langer,* 962 F.2d 592, 597 (7th Cir.1992). We can, however, take jurisdiction of such claims when a defendant's attorney on appeal is not the same person who represented him at trial and when the claim rests on the trial record alone. *United States v. Boyles,* 57 F.3d 535, 550 (7th Cir. 1995); *United States v. Taglia,* 922 F.2d 413, 417 (7th Cir.), *cert. denied sub nom. McDonnell v. United States,* 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991). Mr. Barnes' claim, so far as it goes, meets these conditions.[1]

█ The law clearly defines what constitutes effective assistance for defendants who are considering a guilty plea. In general, defense counsel in a criminal case must perform according to the standard of a reasonably competent attorney. *Strickland v. Washington,* 466 U.S. 668, 687–91, 104 S.Ct. 2052, 2064–67, 80 L.Ed.2d 674 (1984). When a defendant considers the government's offer of a plea agreement, a reasonably competent counsel will attempt to learn all of the facts of the case and to make an estimate of a likely sentence. *See Hill v. Lockhart,* 474 U.S. 52, 56–60, 106 S.Ct. 366, 369–71, 88 L.Ed.2d 203 (1985) (relying on *McMann v. Richardson,* 397 U.S. 759, 769–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763 (1970)). Before he allows his client to plead guilty, the attorney must also communicate the results of his analysis of the case. *McMann,* 397 U.S. at 769–71, 90 S.Ct. at 1448–49. Although the attorney's analysis need not provide a precisely accurate prediction of the respective consequences of pleading guilty or of going to trial, the scrutiny must be undertaken in good faith. *Id.; see also United States v. Arvanitis,* 902 F.2d 489, 494 (7th Cir.1990). It is deficient performance for an

---

1. During oral argument, this court offered Mr. Barnes' appellate counsel the opportunity to seek alternative relief on the ineffective assistance claim through an evidentiary hearing under 28 U.S.C. § 2255. After consulting with Mr. Barnes, he declined this offer, preferring to rely on the trial record alone to support Mr. Barnes'

ineffective assistance claim. As has been pointed out in other opinions, this sort of procedure rarely prevails. *See, e.g., United States v. Allison,* 59 F.3d 625, 629 (7th Cir.1995); *Guinan v. United States,* 6 F.3d 468, 473–74 (7th Cir.1993) (Easterbrook, J., concurring).

attorney to fail to provide good-faith advice about the sentencing consequences of a guilty plea. *McMann*, 397 U.S. at 769–71, 90 S.Ct. at 1448–49. If this deficiency proves to be a decisive factor in a defendant's decision to plead guilty, the defendant has lost the full benefit of his Sixth Amendment rights and may withdraw his plea. *See Hill*, 474 U.S. at 59, 106 S.Ct. at 370–71.

 Mr. Barnes' arguments about ineffective assistance essentially pertain to the requirements for proving ineffective assistance in circumstances like the one presented in this case. We have previously held that an attorney's " 'mere inaccurate prediction' " of a sentence, standing alone, does not demonstrate the deficient performance component of a claim of ineffective assistance of counsel. *Arvanitis*, 902 F.2d at 494 (quoting *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986)). This holding emerges from the acknowledgement that the sentencing consequences of guilty pleas (or, for that matter, guilty verdicts) are extraordinarily difficult to predict. Although the sentencing guidelines significantly restrict the sentencing discretion of the district courts, that discretion is still extensive, and predicting the exercise of that discretion is an uncertain art. Therefore, *Arvanitis* expresses the principle that a mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great, as is the case when an attorney errs about whether his client will be classified as a career offender. A gross mischaracterization of the sentencing consequences of a plea may provide a strong indication of deficient performance, but it is not proof of a deficiency. *See Iaea*, 800 F.2d at 865. A defendant can prove that his attorney's performance was deficient if he shows that his attorney did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him. *See McMann*, 397 U.S. at 769–71, 90 S.Ct. at 1448–49.

The record here is not sufficient to show that Mr. Barnes' plea is invalid because Mr. Barnes' case was prejudiced by the deficient performance of his attorney. Several circumstances of the plea suggest that Mr. Barnes' counsel may not have taken the utmost care in advising his client. At the time of the plea hearing, counsel did not know about a parole revocation on Mr. Barnes' record. That revocation made a 1973 robbery conviction relevant to determining his status under the guidelines, and that conviction qualified Mr. Barnes as a career offender. The existence of this revocation should have been relatively easy to discover, although the gravity of its implications for Mr. Barnes' guidelines score might not have been immediately apparent. It might have been appropriate for a defense attorney to pause before a plea hearing to carefully analyze his client's criminal record in light of the offered plea. Given that Mr. Barnes' change-of-plea hearing occurred immediately after plea bargaining ended, it is possible that counsel did not or could not undertake this kind of careful analysis. Counsel might not have been thorough in considering the sentencing consequences of Mr. Barnes' plea. But the circumstances of Mr. Barnes' plea only suggest this possibility; they do not demonstrate it. Nothing in the trial record proves that Mr. Barnes' counsel did *not* undertake a good faith investigation earlier. With our study confined to the trial record, we cannot find either deficient performance or prejudice. Therefore, we find no error in the denial of Barnes' motion to withdraw his plea.

### III.

 Cheryl Barnes does not challenge the validity of her plea, but she does challenge the enforcement of her plea bargain. She argues that the district court should not have imposed the concurrent eight-year sentences for which her plea bargain provided. In preparing for her sentencing hearing, the district court calculated her guidelines score and found that the guidelines would prescribe a sentence of 46–57 months on the charges to which she pleaded guilty. She contends that the court should have determined her sentence according to the guidelines regardless of what her plea bargain specified. According to Ms. Barnes, the district court's sentence constitutes an upward departure from the guidelines, and plea bargains, in and of themselves, may not autho-

rize such a departure. Thus she concludes that the district court's imposition of the eight-year sentences was invalid and must be reversed even though her guilty plea stands.

Ms. Barnes' argument depends upon the relationship of a plea bargain to the sentencing guidelines. In her view, the guidelines always trump plea bargains. Accordingly, she advances the principle that district courts may only impose the sentences for which plea bargains provide when those sentences correspond with the prescriptions of the guidelines or when a departure from the guidelines is justified by the guidelines' prescriptions.

As a preliminary matter, we must decide whether we have jurisdiction to consider the merits of Ms. Barnes' argument at all for her plea agreement contained a waiver of her right to appeal, and we strictly enforce such a waiver. *United States v. Wenger,* 58 F.3d 280 (7th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 349, 133 L.Ed.2d 245 (1995). Ms. Barnes contends that we can ignore the waiver because plea agreements are quite vulnerable. In her view, the provisions of a plea agreement, including any waivers of appeal, become invalid whenever the agreement provides for a sentence that differs from the one that the guidelines would prescribe. Ms. Barnes thus links her jurisdictional arguments with her arguments on the merits. If she is correct about the standing of plea agreements, we must take jurisdiction of her appeal.

 But she is not correct. Plea agreements can retain their authority to bind the government, the defendant and the district court even when they provide for sentences that depart from the prescriptions of the guidelines. *See* United States Sentencing Commission, Guidelines Manual, §§ 6B1.1, 6B1.4 (1994). When a defendant pleads in conformance with Rule 11(e)(1)(C), her plea agreement includes a commitment to a specific sentence. A district court may reject the entire agreement and send the government and the defendant back to where they started; but, if it accepts the agreement, Rule 11(e)(3) mandates that it must accept the plea and, with it, the recommended sentence. *United States v. Bennett,*

990 F.2d 998, 1002 (7th Cir.1993). The district court does not have the power to retain the plea and discard the agreed-upon sentence, even if the sentence departs from what the guidelines might prescribe. *See id.*

Therefore, Ms. Barnes' plea agreement, with all its terms, bound her when she entered her plea according to the agreement and when the district court accepted her plea. This means that her waiver of appeal is valid and deprives us of jurisdiction. Moreover, even if her waiver were not valid, we would not have jurisdiction over her appeal because we cannot grant the relief she requests. Ms. Barnes wants us to preserve her guilty plea and to discard the sentence imposed by the district court. We cannot do this. If we rule that some provision of the plea agreement is invalid, we must discard the entire agreement and require her and the government to begin their bargaining all over again. We cannot preserve one part of her bargain—the government's promise to drop the firearms charges—and discard another—her promise to serve concurrent eight-year sentences on the conspiracy and cocaine possession charges. If Ms. Barnes thought that the sentencing consequences of her guilty plea were unjust, she could have attacked the validity of the entire plea as her husband did. She could have argued that she misunderstood an essential term of that agreement because she thought that eight years was an upper limit for her sentence and not the duration of the sentence itself. We would have jurisdiction to hear this argument; but we cannot hear the argument that she did make.

For these reasons, Cheryl Barnes' appeal is DISMISSED for want of jurisdiction and, in Michael Barnes' case, the judgment of the district court is AFFIRMED.