UNITED STATES of America,
Plaintiff–Appellee,

v.

Pedro MARTINEZ, III, a/k/a Pete,
Defendant–Appellant.

No. 98–1792.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 12, 1998.

Decided March 1, 1999.

Andrew B. Baker, Jr., Office of the United States Attorney, Dyer, IN, Kenneth M. Hays (argued), Office of the United States Attorney, South Bend, IN, for Plaintiff–Appellee.

Matthew D. Soliday (argued), Valparaiso, IN, for Defendant–Appellant.

Before FLAUM, EASTERBROOK and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Before us is Pedro Martinez, III's direct appeal from the district court's denial of his ineffective assistance of counsel claim and motion to withdraw his guilty plea. He also appeals the court's refusal to grant him a two-level sentence decrease for accepting responsibility for his crime and its imposition of a two-level increase for obstruction of justice under the Sentencing Guidelines. For the reasons discussed below, we affirm the district court's decisions.

## FACTS

Although this case's procedural history is intricate, the underlying facts of the charged offense are simple. On April 6, 1995 a Grand Jury indicted Martinez on multiple drug trafficking counts and a single count of Using or Carrying a Weapon During a Narcotics Trafficking Crime in violation of 18 U.S.C. § 924(c) ("the gun charge").[1] The indictment charged that the defendant was an integral part of a marijuana conspiracy based in LaPorte, Indiana. Through the efforts of postal inspectors and a number of confidential informers, the federal government became aware of this drug ring, and began surveillance of its members. Based on their observations, the police stopped Martinez's car during one particular sortie between Milwaukee and LaPorte. The police also stopped another car traveling in close prox-imity, whose passenger's were admittedly working with the defendant. In the second car, a man named Roberto Lozano[2] was carrying a .357 Smith & Wesson handgun, allegedly as protection for the drug dealers.

On July 25, 1995, the defendant entered a plea of guilty to a single narcotics count and the gun charge. The district court went through an extensive Rule 11 colloquy with the defendant, who was represented by an attorney named Mario Martinez. More than once during the Rule 11 hearing the defendant expressed apprehensions about pleading guilty to all of the specific elements of the gun charge. On several occasions when Pedro Martinez expressed reluctance to admit predicate facts, Judge Lozano stopped the proceedings, and the defendant and his attorney conversed "off the record." Observing these interactions, Judge Lozano mentioned that he was "concerned" about the hearing, although those concerns were ultimately allayed by the defendant's admissions.

In addition to the difficulties at the Rule 11 hearing, the defendant had other problems with his attorney. The defendant and his mother both claim that attorney Martinez assured them that Pedro's maximum possible sentence was five years, and that he might be able to serve the time in a boot camp. The attorney acknowledged having told his client this, and also admitted that he later realized that such a sentence was far less than the statutorily proscribed minimum. However, he did not remember whether he informed the defendant of his discovery. After entering the guilty plea, Pedro Martinez dismissed his lawyer.

Based on his problems with his attorney, the defendant filed a motion to withdraw his guilty plea.[3] The defendant also argued that he was not legally culpable for the gun charge to which he pled, because he was not "using or carrying" the weapon as § 924(c) requires. The district court granted an evidentiary hearing on the factual issues under-

---

1. "Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States uses or carries a firearm, shall in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years ...."

2. Lozano is not related to the district court judge.

3. Apparently, the defendant only sought to withdraw his plea to Count XIX, and did not contest his guilty plea to the narcotics charge.

pinning the defendant's claims, and gave the defendant wide latitude to call numerous witnesses. The government called Martinez's former lawyer, who was thoroughly cross-examined by Martinez. After listening to extensive testimony, Judge Lozano concluded that the defendant failed to provide good reason to withdraw his guilty plea.

At the sentencing hearing, Judge Lozano imposed a ninety-seven month sentence on the narcotics charge, and a sixty month sentence on the gun count, to be served consecutively for a total of 157 months. This sentence was at the bottom end of the range Martinez could have received. The defendant sought a two-level sentence decrease for his acceptance of responsibility, but the district court, citing inaccuracies and mistruths in Martinez's testimony, refused to grant the decrease.

## ANALYSIS

### I.

#### A.

■ Pedro Martinez's first argument is that he suffered from ineffective assistance of counsel at his guilty plea hearing. Before addressing the merits, the government challenges this court's "jurisdiction" over the defendant's claim because it was not raised below. This court may refuse to hear certain arguments not raised in the district court, *see United States v. Garrett*, 90 F.3d 210, 214 (7th Cir.1996), but ineffective assistance appeals are not jurisdictionally precluded. *United States v. Aquilla*, 976 F.2d 1044, 1052–53 (7th Cir.1992). In fact, when we refuse to hear these kinds of appeals, it is not because any jurisdictional defect in an appellant's claim precludes us from doing so.

Indeed, the case the government cites for the proposition that we not might have jurisdiction over this appeal, *United States v. Langer*, 962 F.2d 592 (7th Cir.1992), never even addresses jurisdiction. Instead, that decision reiterated our longstanding prudential practice of refusing to review some ineffective assistance of counsel claims raised for the first time on direct appeal. *Id.* at 597,

citing *United States v. Limehouse*, 950 F.2d 501, 503 (7th Cir.1991). This approach flows from the premise that raising an ineffective assistance of counsel argument on direct appeal is virtually never a winning strategy, because of the absence of a sufficient record.[4] *Aquilla*, 976 F.2d at 1053. We underscore that this approach implicates principles of judicial economy and good decisionmaking, rather than jurisdiction. Thus, there are cases where the defendant is entirely within his rights to wait to raise an ineffective assistance claim until he initiates a habeas proceeding. *See Duarte v. United States*, 81 F.3d 75, 76–77 (7th Cir.1996) ("all aspects of a claim of ineffective assistance of counsel are open [in a § 2255 motion] whenever any important element of the challenge could not have been presented on the original record.").

■ On the other hand, there are some cases where it is appropriate, if not mandatory, for a defendant to raise his ineffective assistance of counsel claim on direct appeal rather than waiting for collateral review. We will address the merits of an ineffective assistance claim on direct appeal "when a defendant's attorney is not the same person who represented him at trial [or at the plea hearing] and when the claim rests on the trial record alone," if the record is full enough for us to address the appellant's claim. *United States v. Barnes*, 83 F.3d 934, 939 (7th Cir.), *cert. denied*, 519 U.S. 857, 117 S.Ct. 156, 136 L.Ed.2d 101 (1996); *see also Guinan v. United States*, 6 F.3d 468, 472–73 (7th Cir.1993). Pedro Martinez's claim meets these conditions, and thus, consonant with our approach to these situations, we address his claim of ineffective assistance of counsel.

#### B.

■ Counsel in a criminal case must perform according to the standard of a reasonably competent attorney. *Barnes*, 83 F.3d at 939, citing *Strickland v. Washington*, 466 U.S. 668, 687–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the plea bargain

---

4. The preferred method for a federal prisoner is ordinarily a § 2255 proceeding. 976 F.2d at 1053.

context a defendant must establish that his counsel's performance was objectively unreasonable and that but for counsel's errors, he would not have pleaded guilty and instead gone to trial. *Hill v. Lockhart,* 474 U.S. 52, 56–60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The first prong demands that counsel attempt to learn the facts of the case and make a good-faith estimate of a likely sentence. *Id.* To prove the second prong, a defendant must show that his lawyer's deficiency was a "decisive factor in [his] decision to plead guilty." *Barnes,* 83 F.3d at 940, citing *Hill,* 474 U.S. at 59, 106 S.Ct. 366.

■ The defendant casts myriad aspersions on his attorney's performance, but fails to bolster many of them with meaningful legal and factual arguments. We need not address those arguments which are undeveloped. *See United States v. Dawn,* 129 F.3d 878, 881 n. 3 (7th Cir.1997).

However, we must resolve the defendant's claim that his attorney promised him a five year sentence (which could be reduced to one year) and that he would get boot camp if he pled guilty. Attorney Martinez disputed this version of events. He testified that he had told the defendant that if he could get him into boot camp he would, not that he made specific promises. Nevertheless, attorney Martinez conceded that he never informed his client that he was not eligible for boot camp and that the gun charge alone carried a five year minimum sentence to be served consecutively to other penalties. Regardless of whose version is right, attorney Martinez did not serve his client well in this regard.

■ A defense attorney cannot promise his client a particular sentence; all he can do is make a prediction. Here, we must decide whether attorney Martinez's error effectively deprived his client of his Sixth Amendment rights under *Hill.* 474 U.S. at 59, 106 S.Ct. 366. In this circuit, an attorney's "mere inaccurate prediction of a sentence" does not demonstrate the deficiency component of an ineffective assistance of counsel claim. *Barnes,* 83 F.3d at 940; *see also United States v. Arvanitis,* 902 F.2d 489 (7th Cir. 1990).

■ Thus, the question is whether these were "mere inaccurate predictions" or whether they were something more invidious. In

*Barnes,* the defendant's lawyer failed to inform him that if he pled guilty, he would be classified as a career offender, and thus subject to much greater punishment than the lawyer predicted. We held that even a "mistake that great" was insufficient to establish a constitutional violation. *Id. See also United States v. Thornton,* 23 F.3d 1532, 1533 (9th Cir.1994) (per curiam). *United States v. Teller* also undercuts the defendant's argument. There, defendant's counsel failed to recognize issues of federal and state jurisdiction, resulting in a far more severe punishment being levied upon the defendant. 762 F.2d 569, 577 (7th Cir.1985). We observed that "the distinction between federal and state jurisdiction is among the most basic to our legal system, and even a reasonably competent first year law student must be aware of it," but did not find that counsel's failure rose to the level of ineffective assistance of counsel. *Id.* Accordingly, the defendant was not permitted to withdraw his guilty plea. *Id.* We believe *Barnes* and *Teller* are controlling.

We recognize that some predictions are such gross mischaracterizations that they provide a "strong indication of [constitutionally] deficient performance." *Iaea v. Sunn,* 800 F.2d 861, 865 (9th Cir.1986); *Strader v. Garrison,* 611 F.2d 61, 63–64 (4th Cir.1979) (defendant permitted to withdraw guilty plea because there was substantial evidence showing he was "grossly misled" about sentence, and defendant clearly relied on attorney's statements). However, we believe this case does not approach that line. See *Barnes,* 83 F.3d at 940. To rise to a constitutional violation, there must be greater evidence than there is here of the attorney's lack of a good-faith effort to discover and analyze relevant facts and discuss them with the client. *Id.* However, even if attorney Martinez's counsel was objectively ineffective, it is far from clear that the defendant's plea would have been different.

At the defendant's Rule 11 colloquy, the district court inquired whether "anyone, including your own lawyer ... made any promise or assurance to you of any kind in an effort to induce or cause you to enter into a plea of guilty?" The defendant answered

"no." He gave the same answer when the district court asked whether anyone "including your own lawyer ... attempted in any way to force you to plead guilty in this case?" The defendant also acknowledged that he knew that he faced mandatory minimum sentences of five years on each count. To avoid potential confusion, the district court explicitly pointed out that the second five year sentence was "in addition to any sentence you might get" for the drug trafficking charge, and that the sentences were consecutive, and not concurrent. Judge Lozano informed Martinez that he could spend as much as forty-five years in prison. The defendant indicated that he understood each of these statements, and declined to ask any questions regarding the penalties when he was offered the opportunity.

While Judge Lozano's Rule 11 hearing was in no way defective, an additional question or two might well have allayed any misgivings one might have about whether the defendant relied on his attorney's misrepresentations about his sentence. We are concerned that there may be cases where a defendant is not actually "promised or assured" anything by his lawyer, but a powerful suggestion may have been made that impacted the defendant's choice to plead guilty. An open-ended question, inquiring into whether the defendant has any firm beliefs about what is going to happen that are critical to his decision to plead guilty could better flesh out these situations, and aid district courts in the first instance, and appellate courts on review, in assessing the validity of a defendant's claim to withdraw his plea.

In asserting that he would not have pled guilty but for his attorney's misrepresentations, the defendant asks us to disregard the statements he made at the Rule 11 hearing. However, "the record of a Rule 11 proceeding is entitled to a 'presumption of verity' ... and the answers contained therein are binding." *United States v. Winston*, 34 F.3d 574, 578 (7th Cir.1994). "We will not force an attitude of skepticism on [Rule 11 hearings] which would eliminate the presumption of truthfulness expected from responses given under oath." *United States v. Gwiazdzinski*, 141 F.3d 784, 788 (7th Cir.1998).

Additionally, we find the logic and holding of *United States v. Byrd* persuasive. 669 F.Supp. 861 (N.D.Ill.1987). At a Rule 11 hearing, defendant Byrd told the court that his guilty plea was not conditioned on anyone's sentencing promises or predictions. And, "although he was given several opportunities to reveal the alleged improper representations of his attorney," Byrd did not do so. *Id.* at 866. By failing to raise his concerns in the face of the ample opportunities he was given, Byrd "fail[ed] to override the presumptive aspect of the Rule 11 questions between himself and [the] court." *Id.*

This rationale applies to the case before us. Although Martinez asserts that he would not have pled guilty but for his attorney's flawed predictions, his Rule 11 hearing tells a different story. Because of the great weight we place on these in-court statements, we credit them over his later claims. Accordingly, we do not believe the defendant has proved either prong of the ineffective assistance of counsel test.

## II.

■ The defendant's second claim is that the district court erred by denying his motion to withdraw his guilty plea. He argues that there was no factual basis to support his guilty plea as to the gun charge under § 924(c) under *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). A district court's decision on such a motion is reviewed for abuse of discretion. *United States v. Salgado–Ocampo*, 159 F.3d 322, 325 (7th Cir.1998). If the district court incorrectly interpreted *Bailey*, that would qualify as an abuse of discretion. *Lee v. United States*, 113 F.3d 73, 76 (7th Cir.1997).

■ Pedro Martinez argues that the presence of the firearm in the second vehicle was "merely coincidental to the drug activity." Thus, he contends he cannot be held vicariously liable for the weapon under conspiracy doctrine, because he had no control over the gun. In support of this he points to his testimony at the evidentiary hearing the district court held on whether the defendant was entitled to withdraw his guilty plea. There, he testified that Roberto Lozano, the gun carrier, was only along for the ride, and was supposed to be dropped off in Chicago, before the rest of the party went on to

Indiana to pick up twenty-eight pounds of marijuana. The defendant also asserts that he cannot be held liable because he neither used nor carried a weapon under *Bailey*. In analyzing these claims, we again note the importance of holding defendants to the factual admissions they make in Rule 11 hearings.

On the defendant's first claim, we note that "[i]t is beyond argument in this circuit that the rule of co-conspirator liability ... applies to § 924(c)convictions." *Woodruff v. United States*, 131 F.3d 1238, 1243 (7th Cir.1997). Here, the defendant admitted sufficient facts at the Rule 11 hearing to prove that he and Roberto Lozano were co-conspirators. The defendant knew that Lozano was carrying the gun in the second car, and admitted that it was brought along for use in the event "a situation developed." He admitted that Lozano was along to pick up drugs in Indiana, and indicated that he felt he had control over the weapon for purposes of his own protections. Indeed, Pedro Martinez even acknowledged that he had been instructed to bring a weapon in addition to the one they already had with them on the trip. In this context, these facts are sufficient to establish that the defendant may be held liable for his compatriot's acts. *Lee*, 113 F.3d at 76–77; *see also United States v. Damico*, 99 F.3d 1431, 1434 (7th Cir.1996), *cert. denied*, 519 U.S. 1151, 117 S.Ct. 1086, 137 L.Ed.2d 220 (1997).

Thus, we must examine whether a gun was used or carried in connection with the underlying narcotics transaction. Given that the Supreme Court has defined "use" of a firearm as brandishing, displaying, bartering, striking with, firing, attempting to fire or even referring to a firearm within one's possession, *Bailey*, 516 U.S. at 147–49, 116 S.Ct. at 508; *United States v. Baker*, 78 F.3d 1241, 1246 (7th Cir.1996), Martinez clearly did not "use" a gun.

However, *Bailey* distinguished "use of a firearm" from "carrying a firearm" under § 924(c). The "carrying a firearm" language sweeps some offenders "who would not satisfy the 'use prong' within the reach of the statute .... A firearm can be carried without being used." 516 U.S. at 147–51, 116 S.Ct. at 507–09. Post–*Bailey*, a number of defendants who pled guilty to § 924(c)

charges have attempted to withdraw those pleas, arguing that they neither used nor carried a firearm in the commission of a narcotics crime. In cases where the defendant has admitted facts sufficient to prove the § 924(c) violation, we have denied those requests. *Woodruff*, 131 F.3d 1238; *Damico*, 99 F.3d at 1431. On the other hand, where defendants have said that they carried a gun, but have not admitted facts bearing that out, we have allowed them to withdraw their pleas. *See Stanback v. United States*, 113 F.3d 651 (7th Cir.1997); *Lee*, 113 F.3d 73.

As noted above, this defendant did more than mouth the words that he had carried a gun during a narcotics crime. He conceded that he knew the gun was being brought from Wisconsin to Indiana for the purpose of providing protection for all of the participants on the drug run. If problems developed, Martinez expected that Lozano would use the gun to quell the incipient trouble. This is similar to *Damico*, where the defendant admitted that a co-conspirator transported a firearm in his car for the specific purpose of committing a robbery. 99 F.3d at 1435. *See also Baker*, 78 F.3d at 1247 ("[T]here is little question that transporting a gun in a car within reasonable reach constitutes 'carrying' for the purposes of § 924(c) .... [P]ossession of the firearm coupled with the affirmative act of transporting it during and in relation to a drug trafficking crime ... precipitates liability under" the statute.). Martinez argues that the gun was not directly available to him because it was in another car when he was arrested. However, as we pointed out in response to a similar claim in *Damico*, the defendant was not "in the dark about where the firearm" was when entering his plea. 99 F.3d at 1435. To uphold the § 924(c) charge, it was enough that Damico "admitted as a background fact that the co-conspirator had taken the firearm to Wisconsin with him for the purpose of committing" a crime. *Id.* The same logic applies here.

The defendant claims support from *Stanback* and *Lee*, but finds no relief. In *Stanback*, the defendant generally admitted that he "used and carried" a revolver, but he "acknowledged no specific facts reasonably

establishing that he handled the gun in one of the various ways we have recognized as 'carrying.' " 113 F.3d at 659. In *Lee*, the defendant pled guilty solely on the basis of possessing the weapon in his home; the record contained no facts showing how the gun was "used" or "carried" in relation to a narcotics offense. 113 F.3d 73, 77. Thus, the court did not hold the defendant to his guilty plea. Based on presence of facts lacking in *Stanback* and *Lee*, those cases are distinguishable from the case at hand. We therefore conclude that the district court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea.

### III.

 Finally, Pedro Martinez challenges the trial judge's rulings under the Sentencing Guidelines. He asks us to reverse the imposition of an enhancement for obstruction of justice, and the court's denial of a two-level decrease for acceptance of responsibility. Both of these decisions are reviewed under a highly deferential standard, and we will not disturb the district court's factual findings unless they were clearly erroneous. *United States v. Owolabi*, 69 F.3d 156, 162 (7th Cir.1995). Any errors, however, in legal interpretation of the Guidelines are reviewed de novo. *Id.*

The defendant's first objection is that § 924(c) is not amenable to a Guidelines enhancement, and thus the obstruction of justice increase was legally unsupportable. This argument is a misreading of *United States v. Mrazek*, 998 F.2d 453, 454 (7th Cir.1993). *Mrazek* held that a conviction under § 924(c) "precludes the enhancement the Guidelines would otherwise provide." *Id.* The words "the enhancement" in *Mrazek* were not a blanket prohibition on any Guidelines enhancements, but rather referred specifically to the five level increase for using a firearm during a bank robbery. *Id. See* U.S.S.G. § 2K2.4. This sagacious policy prevents unfair double punishment for gun use, but it does not give defendants a proverbial "get out of jail free card" for the rest of the Guidelines.

 When a defendant gives false testimony with the intent to secure a lower sentence rather than as a result of confusion, mistake or faulty memory, a court may impose the enhancement under U.S.S.G. § 3C1.1. *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). Here, the district court based its obstruction of justice increase on the defendant's testimony at his withdrawal of plea hearing, which was at odds with his Rule 11 hearing averments. Based on his own observations, which we defer to, *see United States v. Romero*, 57 F.3d 565 (7th Cir.1995), the district court found the defendant's statements at his withdrawal hearing perjurious. This is sufficient to uphold an obstruction of justice enhancement under the Guidelines. *United States v. Winston*, 34 F.3d 574 (7th Cir.1994) (inconsistencies between defendant's plea testimony and sentencing hearing testimony held to obstruct justice in violation of U.S.S.G. § 3C1.1).

 The defendant's second sentencing challenge is that the district court erred in refusing to grant him a two level reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility. Where a defendant "falsely denies ... relevant conduct that the court determines to be true," he "has acted in a manner inconsistent with the acceptance of responsibility," and the district court may refuse to grant this reduction. § 3E1.1(a); see *United States v. Purchess*, 107 F.3d 1261, 1264 n. 1 (7th Cir.1997). This is a factual question, "depending largely on the credibility assessments of the sentencing judge." *United States v. Schuler*, 34 F.3d 457, 460 (7th Cir.1994). In *Schuler*, the defendant pled guilty to a § 924(c) count, but later protested that he had not actually used the gun as he had previously admitted. 34 F.3d at 461. The district court found the defendant's second story incredible, and ruled that by changing his story, Schuler was not accepting responsibility for his crime. We affirmed the district court's decision to deny the two-level reduction. *Id.* Here, Martinez, after pleading guilty, changed his story and falsely denied facts about membership in the drug conspiracy and the intended use of the gun. Under the circumstances, the district court was within its power to find that the defendant had not accepted responsibility for his crime.

### IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.