# United States Navy–Marine Corps Court of Criminal Appeals

| | |
|---|---|
| **UNITED STATES** <br> *Appellee* <br><br> **v.** <br><br> **Justin M. COLLETTI** <br> **Staff Sergeant (E-6)** <br> **U.S. Marine Corps** <br> *Appellant* | **NMCCA NO. 202300104** <br><br> **Panel 3** <br><br> **ORDER** <br><br> ***Denying the Government's Motion for Panel Reconsideration*** |

## PUBLISHED ORDER OF THE COURT

Although the Military Justice Act of 2016 (MJA 16) is rapidly approaching its tenth anniversary, the legal issues mustered by that legislation are only now approaching the pickets of the military appellate courts in force. The Government's Motion for En Banc and Panel Reconsideration of this Court's decision dated 12 March 2024 heralds the arrival of another.[1]

In our previous decision, we found Appellant's plea to violating the federal wire fraud statute, 18 U.S.C. § 1343, to be improvident.[2] The Government doesn't challenge our holding that the digital images Appellant obtained from the victims of his catfishing-for-pictures scheme weren't property for purposes of the federal wire fraud statute.[3] Instead, the Government challenges our decision to invalidate the plea agreement, and thus set aside the remaining findings and sentence, after we set aside Appellant's conviction for wire fraud, which everyone agrees was the gravamen[4] of Appellant's court-martial.[5]

---

[1] On 9 May 2024, the Government's Motion for En Banc Reconsideration was denied in a separate Court Order.

[2] *United States v. Colletti*, __ M.J. __, 2024 CCA LEXIS 106 (N-M. Ct. Crim. App. 2024).

[3] Gov't Motion at 4.

[4] *Gravamen*, Black's Law Dictionary (11th ed. 2019) (defining "gravamen" as "[t]he substantial point or essence of a claim, grievance, or complaint.").

[5] *Id.*

While the Court's remedy would be immediately recognizable to practitioners familiar with a so-called "C plea" pursuant to Federal Rule of Criminal Procedure (Rule) 11(c)(1)(C), our decision to analogize the requisite remedy, for brevity's sake, to pre-MJA 16 cases has apparently confounded the Government. Indeed, the Government's motion cites only one post-MJA 16 case, *United States v. Alkazahg*,[6] which is evidence that the Government fails to appreciate the statutory landscape that governs this case. The Government even appears to suggest that the Court has abandoned law entirely and rooted its decision in equity.[7] And so we remind the Government that this is not a Court of equity.[8] But because this case presents a matter of first impression, at least in military courts, we endeavor to more fully explain our decision.

The pre-MJA 16 plea-bargaining practice was "not planned by the drafters of the UCMJ, but…rather evolved from a confluence of statutory structure, case law, and procedural rules over the course of several decades…and came to be known, and criticized, as 'beat the deal' plea-bargaining."[9] To remedy this situation, in late 2015 the Military Justice Review Group (MJRG) proposed a new statute, Article 53a, which was intended to adopt federal civilian plea-bargaining practice as set forth in Rule 11(c)(1).[10]

As the MJRG explained, there are two types of plea agreements in federal practice related to sentencing.[11] Under Rule 11(c)(1)(B), or a "B plea," a prosecutor agrees to make a recommendation to the judge that a specific sentence or sentencing range is appropriate.[12] But under a "C plea," the judge is bound by the parties' agreement to a specific sentence or sentencing range.[13] And under a "C plea," the judge has only three options: (1) accept the agreement and adjudge the sentence (or within the limits of the sentencing range) agreed to by the parties; (2) reject the agreement entirely; or (3) defer the decision until after review of the presentence report.[14]

---

[6] 81 M.J. 764 (N-M. Ct. Crim. App. 2021).

[7] Gov't Motion at 3.

[8] *United States v. Quiroz*, 55 M.J. 334, 340 (C.A.A.F. 2001).

[9] Dep't of Defense, Report of the Military Justice Review Group 484 (2015) (hereinafter MJRG Report) (citing Colin A. Kisor, *The Need for Sentencing Reform in Military Courts-Martial*, 58 NAVAL L. REV. 39, 46 (2009) (criticizing 'beat the deal' plea-bargaining as inherently slanted in favor of the convicted servicemember)).

[10] *Id.* at 485.

[11] *Id.* at 485 n.20.

[12] *Id.* (citing FED. R. CRIM. P. 11(c)(1)(B)).

[13] *Id.*

[14] *Id.*

Congress ultimately adopted the MJRG's proposal for Article 53a, UCMJ, in the MJA 16. As a result, while military servicemembers continue to be able to bargain for how the convening authority will dispose of one or more charges and specifications,[15] they may also now bargain for specific limitations on the sentence that may be adjudged for one or more charges and specifications just like defendants in federal court.[16]

And that's precisely what happened here. Appellant and the Government agreed that Appellant would plead guilty to three offenses, the most serious being wire fraud, and as consideration for those three pleas, the parties agreed that a specific, unitary sentence would be imposed: reduction to E-1, forfeiture of $1,278.00 pay per month for twelve months, and a bad-conduct discharge.

Although the statutory framework for plea agreements has changed, plea agreements are still contracts, and the terms of those contracts are ascertained using general principles of contract law.[17] And under those general principles of contract law, a theory of mutual mistake *may* provide a basis for invalidating an agreement.[18] But just any mistake won't do. The mistake of both parties must go to a basic assumption on which the contract was made and have a material effect on the agreed exchange of performances.[19] And if a contract is based on a material, mutual mistake, the usual remedy is to void the agreement.[20]

The nature of the charge to which an accused pleads guilty, the factual basis for the plea, and the limits of the court's sentencing authority are all essential parameters of a guilty plea.[21] Additionally, when the Government and an accused enter into a "C plea," "the punishment is specified as an essential term of the agreement because the guilty plea is exchanged for the imposition of a

---

[15] 10 U.S.C. § 853a(1)(A).

[16] *Id.*

[17] *United States v. Perron*, 58 M.J. 78, 88 (C.A.A.F. 2003).

[18] *United States v. White*, 597 F.3d 863 (7th Cir. 2010); *United States v. Molina*, 68 M.J. 532, 535 (C.G. Ct. Crim. App. 2009).

[19] *United States v. Cieslowski*, 410 F.3d 353, 365 (7th Cir. 2005) (citing Restatement (Second) of Contracts § 152(1)).

[20] *United States v. Lacy*, 813 F.3d 654, 658 (7th Cir. 2016) (citing *United States v. Cook*, 406 F.3d 485, 488 (7th Cir. 2005) ("When a contract is rescinded, the parties are put back where they were before there was a contract…A plea agreement is the same.") (internal citations omitted)); *United States v. Ballis*, 28 F.3d 1399, 1409 (5th Cir. 1994).

[21] *United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996).

specific sentence, and the [trial] court that enforces the agreement is bound by this term."[22]

In this case, we have previously held there was a mutual misunderstanding between the parties that Appellant could validly plead guilty to violating the federal wire fraud statute in exchange for, among other things, a specific sentence, a "C plea," or in the parlance of the UCMJ, an Article 53a(a)(1)(B) plea.[23] And we held that the wire fraud conviction was the gravamen of this case.[24]

Under these circumstances, the plea agreement is voidable because the mistake involves several of the contract's essential terms[25] and goes to basic assumptions on which the contract was made, resulting in a material effect on the agreed exchange of performances.[26] "And in the context of a guilty plea, where fundamental constitutional rights are at stake, we must be especially vigilant in finding a meeting of the minds."[27]

The Government nevertheless asks us to preserve the remaining bargained-for pleas in Appellant's case, discard the bargained-for, "C-plea" sentence, and reassess the sentence.[28] We can't do that here.[29] An appellate court cannot impose alternate relief "in the absence of an appellant's consent."[30] And with neither specific performance nor alternate relief available, withdrawal of

---

[22] *Id.* at 938.

[23] *Colletti*, 2024 CCA LEXIS 106 at *17, n.90.

[24] *Id.*

[25] *United States v. Ahlenius*, 1999 U.S. App. LEXIS 26491, *8 (10th Cir. 1999) (citing *Barnes*, 83 F.3d at 938).

[26] *Cieslowski*, 410 F.3d at 365 (citing Restatement (Second) of Contracts § 152(1)); *see also, United States v. Bunner*, 134 F.3d 1000, 1004 (10th Cir. 1998) (holding frustration of purpose doctrine applicable to plea agreements when supervening event renders one party's performance virtually worthless to the other).

[27] *United States v. White*, 628 Fed. Appx. 848, 853 (4th Cir. 2015).

[28] Gov't Motion at 6.

[29] *Barnes*, 83 F.3d at 941; *United States v. Lewis*, 138 F.3d 840, 842 (10th Cir. 1998) (holding where challenged conviction is part of a package, a court may abrogate the entire plea agreement including unchallenged counts of conviction); *United States v. Mitchell*, 50 M.J. 79, 82 (C.A.A.F. 1999) ("[I]f appellant did not receive the benefit of the bargained-for pretrial agreement, the pleas would be treated as improvident, the findings would be set aside and he would be subject to retrial.") (citation omitted).

[30] *Perron*, 58 M.J. at 83-84.

4

Appellant's plea is required.[31] We must discard the entire agreement and require Appellant and the Government to "begin their bargaining all over again."[32]

The only relevant, post-MJA 16 case cited by the Government, *Alkazahg*, is fatal to the Government's motion for reconsideration. First, *Alkazahg* did not, as asserted by the Government, "set aside the findings to an offense that was the gravamen of the case."[33] In *Alkazahg*, this Court dismissed only one of three machine gun charges, which led us to "find the gravamen of the criminal misconduct is unchanged[.]"[34]

More importantly, Private Alkazahg conditionally pleaded guilty to the machine-gun charge he would later successfully challenge on appeal.[35] Thus the parties knew, at the time they entered into a plea agreement, that either the Government or Private Alkazahg was going to prevail on appeal with respect to that charge and specification, and the parties accepted that risk. With that knowledge, the parties nevertheless entered into a plea agreement.

Finally—and most importantly—the agreement that Private Alkazahg and the Government entered into was a "C plea," but it was a "C plea" that required the military judge to impose *segmented* sentences within a discretionary range rather than a specified sentence, as in this case.[36] And so when this Court set aside the challenged conviction, the Court was able to enforce a plea agreement where the parties had not only agreed that the challenge would be preserved, but where they had also negotiated a sentencing range of twenty-four to thirty-six months of confinement in the event that the charge and specification survived appellate review.[37] Under those circumstances, we were able to set aside the bargained-for, segmented sentence and reassess the sentence for the remaining offenses that this Court affirmed pursuant to *United States v. Winkelmann*.[38]

---

[31] *Id.* at 82.

[32] *Barnes*, 83 F.3d at 941*; United States v. Bernard*, 373 F.3d 339, 345 n.7 (3d Cir. 2004) ("If the provisions of a plea agreement are accepted by a court, but later found to be invalid, the proper remedy is not to impose a sentence in violation of the plea agreement, but to allow the defendant to withdraw the guilty plea and either negotiate a new agreement, or to proceed to trial.").

[33] Gov't Motion at 6.

[34] *Alkazahg*, 81 M.J. at 786.

[35] *Id.* at 772.

[36] *Id.*

[37] *Id.*

[38] *Id.* at 786 (citing *Winkelmann*, 73 M.J. 11 (C.A.A.F. 2013).

Helpfully, we described sentence reassessment in a case involving both unitary and segmented sentences as analogous to "a tower of blocks that remains standing when one block is removed."[39] But the wire fraud charge and specification in this case was the entire foundation upon which the parties negotiated the Government's dismissal of other charges and specifications, Appellant's two additional pleas, and a specified, *unitary* sentence. Under these circumstances, once the foundation for the parties' agreement was removed, the tower tumbled, and the parties start over.[40]

While both parties initially[41] sought to have this Court reassess Appellant's sentence, they never reached agreement on alternative relief as required by *Perron*.[42] And we cannot reassess a sentence after we have found a plea agreement to be void and set aside the bargained-for convictions: "Whatever may be true in the Court of the Red Queen, on this side of Alice's Looking Glass, we have the trial first and the sentence after (and only if the defendant is found guilty), not the reverse."[43]

Appellant may ultimately be proven correct that the remaining charges and specifications merit only "Office Hours"[44] or other administrative punishment.[45] And he might not. Time will tell. But Rule 11(c)(1), upon which Article 53a(2) was based, "prohibits judicial participation in plea discussions with criminal defendants."[46] Our decision afforded Appellant the opportunity to

---

[39] *Alkazahg*, 81 M.J. at 786.

[40] *See generally, Hubbard v. Rewerts*, 2024 U.S. App. LEXIS 9163 (6th Cir. 2024) ("Imagine a Jenga tower. The tower might stand strong as one block is removed. And another. But when a crucial block is removed, the tower tumbles—and the player loses.").

[41] In his opposition to the Government's Motion, Appellant makes clear he wishes to return to the *status quo ante* and begin the plea-bargaining process anew. Def. Opp. at 4. And where the parties don't agree on alternative relief, and specific performance is not available, the result is to nullify the original plea agreement. *Perron*, 58 M.J. at 86. Of course, returning to the *status quo ante* means the offenses to which Appellant pleaded not guilty and the Government agreed to dismiss as part of the plea agreement are now fair game.

[42] *Id.*

[43] *United States v. Stern*, 313 F. Supp. 2d 155, 173, n.18 (S.D.N.Y. 2003).

[44] "NJP is referred to as 'captain's mast' or 'mast' in the sea services, as 'officer hours' in the Marine Corps, and as 'Article 15' in the Army and Air Force, after the article of the UCMJ that governs NJP." *Piersall v. Winter*, 507 F.Supp. 2d 23, 29 (D.D.C. 2007) (citing 10 U.S.C. § 815).

[45] Def. Opp. at 4.

[46] *United States v. Baker*, 489 F.3d 366, 370 (D.C. Cir. 2007); *United States v. Raines*, 82 M.J. 608, 612 n.16 (N-M. Ct. Crim. App. 2022).

withdraw from the plea agreement, and both he and the Government may now test the persuasiveness of their arguments elsewhere.

Having considered the Motion, Appellant's Opposition, and the record of trial, accordingly, it is, by the Court, this 9th day of May 2024,

**ORDERED:**

1. That the Motion for Panel Reconsideration is **DENIED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

Copy to:
45 (CAPT Hartman; LCDR Fontenot);
46 (LCDR LaPlante, LT Nguyen);
02