**HYDRO–AIR EQUIPMENT, INC.,**
**Plaintiff–Appellant,**

v.

**HYATT CORPORATION, A Delaware**
**corporation, Defendant–Appellee.**

**No. 86–2774.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 15, 1987.

Decided May 20, 1988.

Designated for Publication July 22, 1988.

Samuel T. Rees, Leff Katz Rees & Mocciaro, Los Angeles, Cal., for plaintiff-appellant.

David Harriman, Paul Hasting Janofsky & Walker, Los Angeles, Cal., for defendant-appellee.

Before TANG, CANBY and BRUNETTI, Circuit Judges.

CANBY, Circuit Judge:

Hydro–Air Equipment, Inc. appeals the Nevada district court's summary judgment in favor of Hyatt Corporation. Hydro–Air sought a declaratory judgment from the district court, contending that it was entitled to indemnification from Hyatt for settlement costs it paid in the "Ampico action," a lawsuit that followed the 1980 MGM Grand Hotel fire in Las Vegas. The district court held that Hydro–Air's request for implied equitable indemnity could not be maintained as a matter of law because Hydro–Air did not stand in the relationship of joint tortfeasor with Hyatt. We reverse the court's summary judgment and remand for further proceedings.[1]

## FACTUAL BACKGROUND

After the devastating 1980 fire at the MGM Grand Hotel, the hotel's insurer, American Protection Insurance Company

---

1. For purposes of Hyatt's summary judgment motion, the parties and the district court assumed that Elsters Inc., a wholly owned subsidiary of Hyatt and the actual manufacturer of the fan coil units, was the alter-ego of Hyatt. We adhere to that assumption here and simply note that the alter-ego theory may be an issue for litigation on remand.

("Ampico"), paid approximately $141 million dollars to compensate the hotel for property damage and lost profits. Ampico then sued Hydro–Air and numerous other manufacturers and suppliers, claiming that they caused or contributed to the hotel's property damage. Ampico alleged that Hydro–Air had manufactured and supplied the hotel's guest rooms with ventilation units that drew smoke and fumes from the corridors to the rooms, causing considerable property damage in the guest rooms.

The ventilation units were actually manufactured by Elsters Inc, a wholly owned subsidiary of Hyatt Corporation.[2] Hydro–Air was sued because they had purchased Hyatt's ventilation business after Hyatt had installed the fan units in the hotel. Hyatt was not named as a defendant in the Ampico action. Upon receiving the complaint, Hydro–Air notified Hyatt of the pendency of the Ampico suit and requested that Hyatt, as the true manufacturer and installer, defend the action. Hyatt refused. Hydro–Air then moved for summary judgment, asserting that it was not liable to Ampico under any "successor-in-interest" theory. The district court denied Hydro–Air's motion and Hydro–Air subsequently settled the claim against it by paying Ampico $375,000. This settlement was approved by the district court and found to be in good faith. Hydro–Air now seeks indemnification of this amount from Hyatt.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*. *Deutsch Energy Co. v. Mazur*, 813 F.2d 1567, 1568 (9th Cir.1987). Nevada law controls the resolution of this diversity action.

*The General Requirements of Implied Equitable Indemnity.*

In his order granting Hyatt's motion for summary judgment, the district judge concluded that Hydro–Air's action for implied equitable indemnity could not be maintained, as a matter of law and uncontroverted fact, because "the plaintiff-proposed indemnitee and the defendant-proposed indemnitor at no time stood in the relationship of joint tortfeasor or in the relationship of entities which were jointly and severally liable with respect to the claim, lawsuit, or loss for which indemnification is sought." The parties need not be "joint tortfeasors," however, to maintain an action for implied equitable indemnity. Indeed, because indemnity shifts the burden of the entire loss from one party to another, it is often said that indemnity is *not* available in cases involving joint or concurrent tortfeasors having no legal relationship to one another and each owing a duty of care to the injured party. *Central Telephone Company v. Fixtures Mfg.*, 738 P.2d 510, 512 (Nev.1987); *Reid v. Royal Insurance Company*, 390 P.2d 45, 47 (Nev. 1964). *See also Aetna Cas. and Sur. Co. v. Jeppesen & Co.*, 642 F.2d 339, 343 (9th Cir.1981) (limiting *Reid's* rule that one joint tortfeasor may not seek indemnification from another joint tortfeasor to the specific circumstances of that case; *i.e.*, where the parties are equally at fault, had equal knowledge of the danger, and equal opportunity to guard against it).[3]

### A. *The Equitable Nature of Implied Indemnity.*

Hyatt argues that the district court properly granted its motion for summary judgment because implied equitable indemnity should be available only in cer-

---

2. For purposes of Hyatt's summary judgment motion, the parties and the district court assumed that Elsters Inc. was the alter-ego of Hyatt. We adhere to that assumption here and simply note that the alter-ego theory may be an issue for litigation on remand.

3. *See also* 42 C.J.S. *Indemnity* § 27 ("As a general rule, one compelled to pay damages for the negligent or tortious act of another is not entitled to indemnity from the latter where both parties are joint tortfeasors or in *pari delicto*."). Thus, the district court's conclusion that one *must* stand as a joint tortfeasor to maintain an action for implied equitable indemnity is clearly incorrect. We assume that the use of the term "joint tortfeasor," by both the court and the parties, was simply a recognition that some relationship or nexus must exist between the parties before an action for implied equitable indemnity can be maintained.

tain well-defined situations involving joint tortfeasors, principal and agent, or employer and employee. The equitable nature of implied indemnity, however, precludes the use of the strict standards urged by Hyatt. The principle of implied equitable indemnity is designed to prohibit one from profiting by his own wrong at the expense of one who is either free from fault or negligent to a lesser degree. *Santisteven v. Dow Chemical Company,* 506 F.2d 1216, 1219 (9th Cir.1974) (construing Nevada law). In evaluating a claim for implied indemnity, courts must carefully examine both parties' conduct on a case-by-case basis, with the ultimate goal of doing what is fair or just. *Aetna Cas. & Sur. Co. v. Jeppesen & Co.,* 440 F.Supp. 394, 399 (D.Nev.1977). While it is true that the obligation to indemnify clearly arises in certain situations, for example, when a master-servant relationship exists, implied equitable indemnity may be entirely proper if it is simply fairer to shift the burden of loss. *Santisteven,* 506 F.2d at 1219.

In the instant case, an equitable decision on whether or not to grant Hydro–Air's request for indemnification may depend in part on whether the parties intended to included indemnification as a part of their bargain when Hydro–Air purchased Hyatt's ventilation business. *See United Corporation v. Beatty Safway Scaffold Co. of Oregon,* 358 F.2d 470, 479 (9th Cir. 1966) (court noted importance of the fact that parties negotiated a contract price that reflected the duty of one party to indemnify). In addition, Ampico's claim against Hydro–Air specifically alleged the negligent manufacture and installation of the fan units. Since Hyatt alone performed this service, a finder of fact may very well decide that Hyatt was more at fault than Hydro–Air and that it would be fairer to shift the burden of loss to Hyatt.

**B.** *The Relationship Between Hyatt and Hydro–Air.*

A finder of fact will often examine the relationship or nexus between the parties when evaluating whether it is fair to require the indemnitor to pay the losses incurred. *See i.e., Central Telephone Company v. Fixtures Mfg.,* 738 P.2d 510, 512 (Nev.1987). The importance of a nexus between the parties is perhaps best illustrated by its obvious absence in the California case of *Munoz v. Davis,* 141 Cal.App.3d 420, 190 Cal.Rptr. 400 (1983). In *Munoz,* the plaintiff sued his attorney for malpractice, and the attorney sought indemnification from a third-party negligent driver for causing the accident that led to his representation of the plaintiff. *Id.* The court properly denied indemnification because no connection or nexus existed between the attorney's misconduct and the negligent driver's misconduct.[4]

In the present case, a connection does exist between Hyatt and Hydro–Air to permit the maintenance of Hydro–Air's suit for implied equitable indemnity. As a "successor-in-interest" to Hyatt, the true manufacturer, Hydro–Air may be held liable for product defects caused by Hyatt under the principles set forth in *Ray v. Alad,* 19 Cal.3d 22, 136 Cal.Rptr. 574 (1977). In *Ray,* the court held that a successor to a manufacturer might be held liable for product defects caused by the manufacturer if (1) the plaintiff has no remedy against the original manufacturer because it dissolved when the successor acquired its business, (2) the successor has the ability to assume the manufacturer's risk-spreading program, and (3) imposition of liability on the successor would be fair because the successor acquired the original manufacturer's trade name, good will, and customer lists. *Id.* at 136 Cal.Rptr. 580.

In a motion for summary judgment before the district court, Hydro–Air argued that it should not be held liable, under

---

**4.** Hyatt relies on this case to support its assertion that indemnity is only available between two tortfeasors who are jointly and severally liable. While the *Munoz* court does use this language, indemnification was properly denied not because the parties weren't "joint tortfeasors," but because the two tortfeasors (the proposed indemnitor and the indemnitee) committed wholly different wrongs, with no nexus or connection between them that would make it proper to shift the loss.

*Ray's* successor-in-interest theory, for product defects caused by Hyatt. The district court denied Hydro–Air's motion and Hydro–Air settled the suit with Ampico. The successor-in-interest, or contract, relationship between Hydro–Air and Hyatt provides a sufficient nexus between the parties to trigger the equitable principles of implied indemnity. On remand, the trier of fact should evaluate whether, under the principles of *Ray* as they may apply in Nevada, Hydro–Air must assume tort liability for defects caused by Hyatt's actions or whether indemnification from Hyatt is proper. *See Central Telephone,* 738 P.2d at 512 (the trier of fact is best able to evaluate the relationship between the parties to determine whether the burden of loss should be shifted).

### C. *The Settlement.*

■ Finally, the circumstances surrounding Hydro–Air's attempts to involve Hyatt in the suit's defense and the good faith of Hydro–Air's settlement may enter into the equities of this situation. Equitable indemnity is not available to a volunteer who had no reasonable good faith belief that he was protecting his own interest when he settled a suit against him. *Aetna Life & Casualty Co. v. Ford Motor Co.,* 50 Cal.App.3d 49, 122 Cal.Rptr. 852, 854 (1975). But if Hydro–Air acted under a good faith belief that it was necessary to settle the case to protect its own interests, it is entitled to indemnification. *Id.*

It is clear on the present record that Hydro–Air did act under a good faith belief when it settled with Ampico. Hydro–Air had notified Hyatt of the action and had given Hyatt the opportunity to defend the suit. Hyatt refused. In addition, Hydro–Air moved for summary judgment on the successor-in-interest theory and sought to settle the case only after the district court denied its motion. Thus, before Hydro–Air settled the case, it received word from the district court that as a successor-in-interest, the action against it could not be dismissed as a matter of law. Finally, the district court found the settlement to be in good faith. Hydro–Air, therefore, was not a volunteer and is entitled to maintain its action for implied equitable indemnity against Hyatt.

### CONCLUSION

The equitable policies underlying implied equitable indemnity would often be frustrated if, as Hyatt suggests, the parties were required to be in one of a limited number of narrow relationships to qualify for indemnity. Material issues of fact exist regarding whether indemnification is proper under the particular circumstances of this case. The district court's grant of Hyatt's summary judgment motion, therefore, is reversed and the case is remanded for further proceedings.