Eric M. ROLL, Plaintiff,

v.

TRACOR, INC., et al., Defendants.

No. CV–S–98–1472–LRL.

United States District Court, D. Nevada.

April 3, 2001.

Gary Logan, Las Vegas, NV, for Plaintiff.

Ron A. Sprague, Gendry & Sprague, P.C., San Antonio, TX, for Defendants.

**ORDER**

LEAVITT, United States Magistrate Judge.

This case arises out of an accident that occurred on November 16, 1994 at Nellis Air Force Base in Nevada. At the time of the accident, plaintiff Eric Roll, who was a munitions technician on active duty with the United States Air Force, was assigned to "build up" several thousand MJU–7/B Countermeasure Flares.[1] Roll was seriously burned when approximately 75 flares ignited accidently in the shop where he was working.

On November 7, 1996, Roll filed this action in the United States District Court for the Western District of New York. Thereafter, pursuant to 28 U.S.C. § 1404(a), the case was transferred to the District of Nevada for the convenience of

---

1. The MJU 7/B Countermeasure Flare is a device used by military pilots to decoy heat seeking missiles away from their aircraft while in combat. The flares in question were manufactured and sold to the Air Force in 1988.

the parties. Roll alleges theories of strict liability, negligence and breach of warranty in the design, manufacture and/or marketing of the MJU–7/B Countermeasure Flares against defendants Tracor, Inc., Tracor Aerospace, Inc., Tracor Flight Systems, Inc., and Tracor Applied Sciences, Inc. Jurisdiction is founded on diversity of citizenship. In his Complaint, Roll alleges that he was working in the State of Nevada when the accident occurred, but was a permanent resident of the State of New York, both at the time of the accident and when the complaint was filed. He alleges further that with the exception of defendant Tracor Applied Sciences, the principal offices of the Tracor defendants are in Austin, Texas. Tracor Applied Sciences, according to the complaint, maintains its principal offices in Rockville, Maryland. Hence, for the purposes of diversity jurisdiction, Roll is a New York domiciliary; defendants Tracor, Tracor Aerospace, and Tracor Flight Systems are Texas domiciliaries; and defendant Tracor Applied Sciences is a Maryland domiciliary.

▉ The matter now before the court is defendants' Second Motion for Summary Judgment (# 15). Relying on the general rule in a products liability case that a corporation which acquires the assets of another corporation does not become liable for the torts of the other corporation unless it expressly agrees to do so, *Mudgett v. Paxson Machine Co.*, 709 S.W.2d 755 (Tex.App.1986), defendants contend that because they did not come into existence until 1991—three years after the flares in question were manufactured and distributed—they cannot be held liable for Roll's injuries. Roll counters that defendants' liability can be based on one of two exceptions to the general rule of non-liability of successor corporations for the torts of predecessor corporations: (1) the "mere continuation" exception or (2) the "product line" exception. The "mere continuation" exception is grounded on considerations of business continuity, *e.g.*, whether divesting and acquiring corporations handled identical products, whether their respective operations were conducted at the same physical premises, and whether the acquiring corporation retained the employees of the divesting corporation. *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 272 (1st Cir.1997). The "product line" exception permits strict liability to be imposed on a successor corporation that acquires a manufacturing business and continues manufacturing the same line of products. *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal. Rptr. 574, 560 P.2d 3 (1977).

## FACTUAL BACKGROUND

The defendants were created as corporate entities in 1991. Defendant Tracor was incorporated in Delaware in 1991 and was qualified to do business in Texas on December 18, 1991. Defendants Tracor Aerospace, Tracor Flight Systems, and Tracor Applied Sciences were subsidiaries of Defendant Tracor, and were all incorporated in December 1991.

Long prior to the incorporation of defendant Tracor there was another Texas corporation called Tracor, Inc. That corporation came into existence in 1955 as Associate Consultants and Engineers, Inc. It changed its name to Texas Research Associates Corporation in 1956 and again to Tracor, Inc. in 1962. On June 1, 1973, a Delaware corporation called Tracor Delaware Corporation was formed. On June 20, 1973, Tracor Delaware Corporation merged with Tracor, Inc. The surviving corporation was a Delaware corporation, which then changed its name to Tracor, Inc. on July 13, 1973. Tracor, Inc. existed until 1991 when it filed for bankruptcy, changed its name to O.T.C. Tracor, and was dissolved.

There were also previously existing companies called Tracor Aerospace, Inc. and

Tracor Applied Sciences, Inc. Both were formed as wholly owned subsidiaries of Tracor, Inc. in 1983. Tracor Aerospace, Inc. was incorporated in Texas as Tracor Aerospace Austin, Inc., and changed its name to Tracor Aerospace, Inc. in 1986. Tracor Applied Sciences Divisions, Inc. was incorporated in Texas as Tracor Applied Sciences Divisions, Inc. and changed its name to Tracor Applied Sciences, Inc. on May 12, 1983. The previous entity known as Flight Systems, Inc. was a California corporation which qualified to do business in Texas in 1977. It changed its name to Tracor Flight Systems, Inc. in 1990. It is undisputed that Tracor Aerospace, Inc. manufactured the subject flares in 1988.

On February 15, 1991, Tracor, Inc., Tracor Aerospace, Inc., Tracor Applied Sciences, Inc. and Tracor Flight Systems, Inc. all filed for bankruptcy protection under Chapter 11 in the Western District of Texas. Joint Plans of Reorganization were approved by the Bankruptcy Court on December 6, 1991. The Plans provided that all of the debtors' executory contracts and unexpired leases with various agencies of the United States were assumed and, upon the effective date of the Plans, each of the government contracts assumed by Tracor, Inc., Tracor Applied Sciences, Inc., Tracor Aerospace, Inc., and Tracor Flight Systems, Inc. were to be assigned, without modification, to TDH Defense or such other members of the TDH Defense Group as designated by TDH Defense. TDH Defense and TDH Defense Group were newly formed entities described in the Plans.

In carrying out the Plans, Tracor, Inc. Tracor Aerospace, Inc., Tracor Applied Sciences, Inc. and Tracor Flight Systems, Inc. changed their names to O.T.C. Tracor Inc., O.T.C. Tracor Aerospace, Inc., O.T.C. Tracor Applied Sciences, Inc. and O.T.C. Tracor Flight Systems, Inc., respectively. All of the assets of these corporations were transferred to the TDH Defense Group. O.T.C. Tracor, Inc. and O.T.C. Tracor Flight Systems, Inc. withdrew from doing business in Texas on December 30, 1991. That same day, O.T.C. Tracor Aerospace, Inc. and O.T.C. Tracor Applied Sciences, Inc. were dissolved. In turn, Tracor, Tracor Aerospace, Tracor Flight Systems, and Tracor Applied Sciences were formed to redistribute the assets of the TDH Defense Group. These are the entities that are currently defendants in this case.

As noted above, in 1988, pursuant to its contract with the government, O.T.C. Tracor Aerospace, Inc., which at the time was called Tracor Aerospace, Inc., manufactured the MJU–7/B Countermeasure Flares involved in this mishap. That contract was fulfilled and completed prior to the bankruptcy filing in 1991. Hence, the contract was not executory and was not purchased or assumed by the TDH Defense Group or passed along to any of the defendants when they were created.

It is uncontroverted that Tracor, Tracor Applied Sciences, and Tracor Flight Systems, past or present, have never designed, manufactured or sold countermeasure flares. The corporation that acquired the manufacturing assets of O.T.C. Tracor Aerospace, Inc., including the Arkansas plant in which the subject flares were made, was defendant Tracor Aerospace. It is also uncontroverted that when defendant Tracor Aerospace acquired the manufacturing assets of O.T.C. Tracor Aerospace, Inc., it continued to manufacture and distribute MJU–7/B Countermeasure Flares without interruption, in the same plant and with the same employees, supervisors, officers and corporate directors that had been employed by or served the former Tracor Aerospace, Inc.

## DISCUSSION

Preliminarily, the court observes that Roll's claims against the three defen-

dants whose predecessors never designed, manufactured or distributed the MJU–7/B Countermeasure Flares are unsupportable as a matter of law. It is undisputed that defendants Tracor Applied Sciences and Tracor Flight Systems, which are subsidiaries of Tracor, had no involvement with the manufacture or distribution of the flares at issue. As for the parent corporation, defendant Tracor,

> [i]t is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.... [T]here is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia,* the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf.

*United States v. Bestfoods,* 524 U.S. 51, 61–62, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). The record contains no evidence suggesting that Tracor has any involvement in the affairs of Tracor Aerospace other than merely exercising the type of control that derives from stock ownership, *e.g.,* electing directors and making by-laws. Such involvement is clearly insufficient to create liability on the part of the parent corporation for the torts of its subsidiary. *See also Manchester Equipment Co., Inc. v. American Way,* 60 F.Supp.2d 3 (E.D.N.Y.1999); *Ministry of Defense of the Islamic Republic of Iran v. Gould,*

*Inc.,* 969 F.2d 764 (9th Cir.1992). Accordingly, the claims against defendants Tracor, Tracor Applied Sciences and Tracor Flight Systems must be dismissed.

The issue, then, is whether Roll's claims against defendant Tracor Aerospace (hereafter "Aerospace II"), whose predecessor, O.T.C. Tracor Aerospace (hereafter "Aerospace I"), admittedly manufactured and distributed the flares in question, are viable under a theory of successor liability. Aerospace II contends that Texas law should govern this issue; Roll contends that the successor liability issue should be governed by Nevada law. To resolve this question the court must engage in a choice-of-law analysis.

■ In a diversity action, the law of the forum state applies to the substantive issues of the case, *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), including that state's choice-of-law rules.[2] *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). As noted, this case was originally filed in the Western District of New York, and was transferred to Nevada pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties. Following transfers for convenience, the transferee court in diversity cases must apply the law of the state in which the action was originally filed. *Van-Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Muldoon v. Tropitone Furn. Co.,* 1 F.3d 964, 965 (9th Cir.1993). Consequently, in undertaking a conflict of laws analysis the court must turn to the choice-of-law rules of the State of New York.

---

2. Roll contends that the choice-of-law rule in this case is controlled by the Federal Enclave Act, 16 U.S.C. § 457. The evidence, however, indicates that the place where Roll was injured at Nellis Air Force Base in Nevada was

not under the exclusive jurisdiction of the United States. Accordingly, the accident did not occur in a "federal enclave," and the Federal Enclave Act does not apply.

Until 1963, New York employed the traditional choice of law principle that the law of the place where the tort occurred governed all substantive issues in the case. This approach was significantly modified by *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). Under *Babcock*, New York courts seek to apply the law of the jurisdiction with the greatest interest in resolving the particular issue in dispute. This rule of depecage[3] requires the court to determine the proper choice of law on the issue of successor liability without regard to other issues in the case.

In tort cases[4] the New York courts draw a distinction between laws that regulate conduct and laws that allocate losses after the tort occurs. Where the laws of competing jurisdictions are in conflict over the applicable conduct-regulating rules, *e.g.*, standards of care, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277, 280 (1993). "Loss allocating rules, on the other hand, are those which prohibit, assign, or limit liability after the tort occurs, such as charitable immunity statutes, guest statutes, wrongful death statutes, vicarious liability statutes, and contribution rules." *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 522, 620 N.Y.S.2d 310, 644 N.E.2d 1001, 1003 (1994) (citations omitted). Normally, the most significant factor to be considered in resolving a choice-of-law question regarding loss allocating rules is the domicile of the parties. *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d at 280. As is true of vicarious liability statutes, laws governing successor liability may impose liability on one party for the torts of another. Therefore, successor liability laws are "loss allocating" within the meaning of New York's choice-of-law rules.

In resolving a conflict between competing loss allocating rules, New York courts look to the rules set forth by the New York Court of Appeals in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972): (1) if the parties are domiciled in the same state, the law of that state must be applied; (2) if the parties are domiciled different states, and the accident occurred in a state where one of the parties was domiciled, the law of that state must be applied; (3) if the parties are domiciled in different states and the accident occurred in a third state, the court will normally apply the law of the state where the accident occurred, unless displacing that law will "advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants." *Neumeier*, 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d at 457–58.

Where the law of the two domiciliary states are in conflict, the court is required "to evaluate the relative interests of jurisdictions with conflicting laws and, if neither can be accommodated without sub-

---

**3.** See Black's Law Dictionary 448 (7th ed.1997)(defining "depecage" as "[a] court's application of different state laws to different issues in a legal dispute; choice of law on an issue-by-issue basis").

**4.** Where, as here, it is claimed that a successor corporation is liable because a product defect has caused injury, this court finds that successor liability is more appropriately characterized as a torts question than a contracts question, because successor liability is basically an expansion of products liability law. *See Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 63, 27 Cal.Rptr. 697, 377 P.2d 897 (1963) (Traynor, J.).

stantially impairing the other, finding some other sound basis for resolving the impasse." *Cooney*, 81 N.Y.2d at 75, 595 N.Y.S.2d 919, 612 N.E.2d at 282.

Assuming that the interest of each [domiciliary] State in enforcement of its law is roughly equal ... the situs of the tort is appropriate as a "tie breaker" because that is the only State with which both parties have purposefully associated themselves in a significant way. Moreover, locus is a neutral factor, rebutting an inference that the forum State is merely protecting its own domiciliary or favoring its own law. Additionally, the place of injury was the traditional choice of law crucible.

*Cooney*, 81 N.Y.2d at 74, 595 N.Y.S.2d 919, 612 N.E.2d at 281–82 (citations omitted).

 Aerospace II is domiciled in Texas. Roll is domiciled in New York.[5] The accident occurred in Nevada. Hence, the third *Neumeier* rule applies in this case. Therefore, Nevada law presumptively applies unless it is demonstrated that displacing Nevada law with the law of either Texas or New York will advance the purposes of successor liability rules without hindering the smooth working of the

multi-state system or creating uncertainty for litigants.

Texas clearly has a strong public policy limiting the scope of successor liability. In 1979, Article 5.10 of the Texas Business Corporation Act was amended to add § B, which provided:

B. A disposition of any, all, or substantially all, of the property and assets of a corporation, whether or not it requires the special authorization of the shareholders of the corporation, effected under Section A of this article or under Article 5.09 of this Act or otherwise:

(1) is not considered to be a merger or conversion pursuant to this Act or otherwise; and

(2) except as otherwise expressly provided by another statute, does not make the acquiring corporation, foreign corporation, or other entity responsible or liable for any liability or obligation of the selling corporation that the acquiring corporation, foreign corporation, or other entity did not expressly assume.

Tex. Bus. Corp. Act, Art. 5.10(B) (Vernon Supp.2000). The statute expressly reflects a policy of the State of Texas that a successor corporation that purchases only the assets of a predecessor corporation is not

---

5. In an affidavit submitted in support of his opposition to the summary judgment motion Roll states that after this lawsuit was filed he moved to Las Vegas and made it his permanent home. He therefore contends that he is now a Nevada domiciliary and should be treated as one for the purposes of this choice-of-law analysis. In his Complaint, however, he represented that at the time of the accident he was a "citizen of the State of New York with his permanent address at 3 Cidermill Court, Depew, New York." It is well settled in tort cases that for the purpose of determining domiciliary in choice-of-law analyses the relevant consideration is the domiciliary of the plaintiff at the time of the accident. *Wheeler v. Standard Tool & Mfg. Co.*, 359 F.Supp. 298, 301 (S.D.N.Y.1973), aff'd. per curiam, 497 F.2d 897 (2d Cir.1974) (post-accident change

of domicile by a plaintiff will not enter into resolution of choice-of-law issue); *O'Brien v. Grumman Corp.*, 475 F.Supp. 284, 294 (S.D.N.Y.1979)(citing *Gore v. Northeast Airlines, Inc.*, 373 F.2d 717, 722–24 (2d Cir. 1967))(the relevant consideration in choice-of-law determinations is the residence of the plaintiff at the time of the accident). *See also Summers v. Interstate Tractor and Equipment Co.*, 466 F.2d 42, 48 n. 3 (9th Cir.1972)("[I]f the choice of law were made to turn on events happening after the accident, forum shopping would be encouraged," quoting *Reich v. Purcell*, 67 Cal.2d 551, 555, 63 Cal.Rptr. 31, 432 P.2d 727 (1967)); *In re Air Crash Disaster*, 644 F.2d 594, 617 (7th Cir.1981). Hence, for the purposes of choice-of-law analysis, Roll must be treated as a New York domiciliary.

liable for the torts of the predecessor unless the successor expressly agrees to assume such liability. Accordingly, Texas courts reject the "mere continuation" exception to the non-liability rule, as well as the "de facto merger" doctrine. *See Mudgett v. Paxson Machine Co.*, 709 S.W.2d 755, 758–59 (Tex.App.1986). For reasons independent of Art. 5.10, Texas courts also reject the "product line" exception to the rule. *See Griggs v. Capitol Machine Works, Inc.*, 690 S.W.2d 287, 291–92 (Tex. App.1985). As stated succinctly in *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 139 (Tex.App.2000), "Texas strongly embraces the non-liability rule. To impose liability for a predecessor's torts, the successor corporation must have expressly assumed liability."

Roll's domicile, New York, also follows the "general rule that a corporation that acquires the assets of another is not liable for the torts of its predecessor." *Schumacher v. Richards Shear Company, Inc.*, 59 N.Y.2d 239, 244, 464 N.Y.S.2d 437, 451 N.E.2d 195, 198 (1983). However, New York recognizes certain exceptions to the general rule which Texas does not: "[a] corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." *Schumacher*, 59 N.Y.2d at 245, 464 N.Y.S.2d 437, 451 N.E.2d at 198.

Under New York law, the "mere continuation" exception "refers to corporate reorganization, ... where only one corporation survives the transaction; the predecessor corporation must be extinguished." *Schumacher*, 59 N.Y.2d at 245, 464 N.Y.S.2d 437, 451 N.E.2d at 198. The successor-buyer is not in existence prior to the purchase of the predecessor's

assets, and the predecessor-seller does not survive the sale of the assets. *Greenlee v. Sherman*, 142 A.D.2d 472, 536 N.Y.S.2d 877, 880 (1989). Other factors considered by New York courts to be indicative of the "mere continuation" exception are that the business of the successor is the same as the business of the predecessor, the business employs the same work force, and the predecessor's officers and directors become the officers and directors of the successor. *Mitchell v. Suburban Propane Gas Corp.*, 182 A.D.2d 934, 581 N.Y.S.2d 927, 929 (1992).

On December 30, 1991, pursuant to a reorganization plan approved by a bankruptcy court, Aerospace I was dissolved, Aerospace II was created, and Aerospace II acquired Aerospace II's assets. Employing the same work force that was employed by Aerospace I, and keeping the same officers and directors, Aerospace II engaged in the same business as its predecessor—manufacturing the MJU 7/B Countermeasure Flares—without interruption and in the same physical plant. Additionally, Aerospace II exploited the good will and corporate name of its predecessor. For all practical purposes, Aerospace II is materially identical to its predecessor, Aerospace I. The court therefore finds that the corporate evolution of Aerospace II constitutes the paradigm case of the "mere continuation" exception to the rule of successor non-liability. Hence, the law of Texas and the law of New York are directly at odds: under New York law Aerospace II is liable for the torts of Aerospace I; under Texas law it is not.

Texas has a strong interest in protecting the viability of and "avoiding burdensome liability" for corporations that do business within its borders. *Sheldon v. PHH Corp.*, 135 F.3d 848, 854 (2d Cir.1998). "[I]nsulation from its predecessor's liabilities of a corporation acquiring business assets has

the undoubted advantage of promoting the free availability and transferability of capital." *Ray v. Alad Corp.*, 19 Cal.3d at 25, 136 Cal.Rptr. 574, 560 P.2d at 5.

New York has a "direct stake" in affording a remedy to a New York plaintiff who is injured by a defective product, *Diehl v. Ogorewac*, 836 F.Supp. 88, 93 (E.D.N.Y. 1993), notwithstanding another state's interest in protecting one of its corporate citizens. "While any state is likely to be solicitous of the rights and welfare of the corporations organized under its laws, the New York courts do not regard this contact of any particular significance in grouping the contacts where compensation for injury to or death of a person is the subject of the litigation." *Gore v. Northeast Airlines, Inc.*, 373 F.2d 717, 725 (2d Cir. 1967).

Nevertheless, Aerospace II argues that because the "mere continuation" exception is a matter of contractual relationships and business practices between Aerospace I, which was a Texas domiciliary, and Aerospace II, which is a Texas domiciliary, only Texas has an interest in the successor liability issue. The court disagrees. New York's recognition of the "mere continuation" exception is a reflection of its strong interest in providing a remedy to the user of a defective product. For example, in a case which extended to mere bystanders the right to seek damages in a products liability case, the New York Court of Appeals said, " 'To restrict recovery to those who are users is unrealistic in view of the fact that bystanders have less opportunity to detect any defect than either purchasers or users. Our decision is one of policy but is mandated by both justice and common sense.' " *Codling v. Paglia*, 32 N.Y.2d 330, 339, 345 N.Y.S.2d 461, 298 N.E.2d 622, 627 (1973)(quoting *Ciampichini v. Ring Bros.*, 40 A.D.2d 289, 339 N.Y.S.2d 716, 720).

Assuming that the interest of Texas in protecting corporations that do business within its borders is roughly equal to New York's interest in providing a remedy to victims injured or killed by defective products, the court must look to the law of the locus state, Nevada, as the "tie breaker." *Cooney*, 81 N.Y.2d at 74, 595 N.Y.S.2d 919, 612 N.E.2d at 281–82.

In Nevada the State Supreme Court has not had occasion to consider the issue of successor liability. It is reasonable to expect, however, that in a torts case the Nevada Supreme Court would follow the lead of the California Supreme Court on this issue, because in the area of products liability the Nevada Court has adopted nearly every holding of the California Court.[6]

California recognizes the same exceptions to the rule against successor liability that New York recognizes, including the "mere continuation" exception. *Ray v. Alad Corp.*, 19 Cal.3d at 28, 136 Cal.Rptr. 574, 560 P.2d at 7.[7] In addition to many of the elements of the "mere continuation" exception set forth by New York courts, "California decisions holding that a corporation acquiring the assets of another corporation is the latter's mere continuation and therefore liable for its debts have imposed such liability only upon a showing of one or both of the following factual ele-

---

**6.** In reviewing a Nevada case in which the question of successor liability in a products defect case was a central issue, the Court of Appeals for the Ninth Circuit in *Hydro–Air Equipment, Inc. v. Hyatt Corp.*, 852 F.2d 403 (9th Cir.1988), directed the trial court to evaluate the issue under the principles of *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977), the leading California Supreme Court opinion on the issue.

**7.** In *Ray v. Alad Corp.* the California Supreme Court also recognized the "products line" exception, which for the purposes of this analysis the court need not consider.

ments: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations." *Ray v. Alad Corp.*, 19 Cal.3d at 29, 136 Cal.Rptr. 574, 560 P.2d at 7. The record here is silent regarding the consideration given by Aerospace II for Aerospace I's assets. It is undisputed, however, that the same officers and directors served both corporate entities. This latter fact alone fulfills the additional factual element required by the California courts. Hence, under California law Aerospace II is a mere continuation of Aerospace I, and is liable for its torts.

In California, the advantages of insulating corporations from liability are outweighed by policy considerations favoring protection of injured users of defective products.

> [T]he paramount policy to be promoted by the rule [of strict tort liability] is the protection of otherwise defenseless victims of manufacturing defects and the spreading throughout society of the cost of compensating them. Justification for imposing strict liability upon a successor to a manufacturer under the circumstances here presented rests upon (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading rule, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.

*Ray v. Alad Corp.*, 19 Cal.3d at 31, 136 Cal.Rptr. 574, 560 P.2d 3. 136 Cal.Rptr. 574, 560 P.2d at 8–9 (citations omitted).

Application of the law of the locus state is appropriate for reasons in addition to its status as a "tie breaker." Nevada's contacts with the parties are not insignificant, or a "matter of fortuity, happenstance or randomness." *Hamilton v. Accu–Tek*, 47 F.Supp.2d 330, 341 (E.D.N.Y.1999). Roll was stationed in Nevada at Nellis Air Force Base; his assignment involved hands-on work on a daily basis with the countermeasure flares manufactured by Aerospace II. He was not merely passing through Nevada when he was injured. And Aerospace II had to be aware that the countermeasure flares it manufactured for the military were being distributed to the Air Force for installation on tactical fighter planes at Nellis, the largest user of countermeasure flares of any Air Force base in the country. Moreover, the choice of Nevada law is consonant with the reasonable expectation of the parties. It would be unreasonable for Aerospace II to expect that Texas law would automatically shield it from successor liability in every state in the Union. It would be unjust to allow a corporation to escape liability and leave potential plaintiffs without a remedy by simply giving itself a reorganizational facelift, and at the same time carry on the same business and manufacture the same product while using the same name, the same plant, and the same personnel. Aerospace II might reasonably expect to be protected from liability by Texas law if an accident involving its product were to occur in Texas, but not if a New York plaintiff were injured in an accident occurring in Nevada.

### ORDER

For the reasons set forth above,

IT IS ORDERED that defendants' Second Motion for Summary Judgment (# 15) is GRANTED only as to defendants Tracor, Inc., Tracor Applied Sciences, Inc. and Tracor Flight Systems, Inc.

IT IS FURTHER ORDERED that defendants' Second Motion for Summary Judgment (# 15) is DENIED as to defendant Tracor Aerospace, Inc.