**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-4678**

_____

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

     v.

ANTONIO VLAIR WHITE,

               Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.   James C. Dever III, Chief District Judge.  (5:12-cr-00308-D-1)

_____

Argued:  September 17, 2015       Decided:  October 19, 2015

_____

Before WILKINSON, AGEE, and HARRIS, Circuit Judges.

_____

Vacated and remanded by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Wilkinson and Judge Agee joined.

_____

**ARGUED**:  Jennifer C. Leisten, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.   Eric D. Goulian, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF**:  Thomas P. McNamara, Federal Public Defender, Stephen C. Gordon, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.   Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

After Antonio White ("White") was indicted for his role in a string of residential burglaries, he struck a deal with the Government, pleading guilty to a conspiracy offense in exchange for the Government's agreement to drop other charges. But as a result of a complicated statutory scheme and one critical error in drafting the plea agreement, White and the Government now disagree about the most fundamental aspect of their bargain: To what conspiracy offense, exactly, did White plead guilty? In the absence of a meeting of the minds over this essential term, there can be no valid plea agreement. Accordingly, we vacate White's judgment of conviction and remand for further proceedings.

## I.

In December 2008, the Criminal Investigations Division of the United States Army began to investigate a series of residential burglaries at the Fort Bragg Military Reservation ("Fort Bragg") in North Carolina. The investigation revealed that White, along with two other people, was involved in stealing private and government property from homes on Fort Bragg. When interviewed by investigators, White acknowledged a role in the burglaries. In September 2012, a grand jury returned an indictment against White.

3

Residential burglary generally is not a federal crime. But when it is committed on a federal enclave, like Fort Bragg, it may give rise to federal charges under the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13. The ACA enables federal authorities to prosecute conduct that occurs on federal enclaves and would be punishable if committed elsewhere within the local jurisdiction, "assimilating" state law to that end. See Lewis v. United States, 523 U.S. 155, 160 (1998). And indeed, one of the crimes with which White was charged — in the second count of his indictment — was a violation of 18 U.S.C. § 13, assimilating North Carolina's residential breaking and entering statute. See North Carolina General Statute (N.C. Gen. Stat.) § 14-54.

The first count of the indictment charged White with conspiracy to commit that federal offense. And here is where things begin to get complicated. Because a federal conspiracy offense rests on an underlying criminal objective, Count One necessarily refers to two separate criminal statutes — or three, if we include the assimilated state statute. Page one of the indictment, under the heading "Count One," tracks the elements of North Carolina law and identifies a conspiracy

> to unlawfully break and enter buildings on various occasions, namely dwelling homes, with the intent to commit larceny therein, without the consent of the owners, in violation of Title 18, United States Code, Section 13, assimilating North Carolina General Statute, Section 14-54.

4

J.A. 13 (emphasis added).  On page two, under the heading "Overt Acts," the indictment describes the acts undertaken by White in "furtherance of the conspiracy," "[a]ll in violation of the provisions of Title 18, United States Code, Section 371," J.A. 14 (emphasis added), the general federal conspiracy statute.[1]

On January 22, 2013, White signed a plea agreement with the Government (the "Agreement").  White agreed to "plead guilty to Count One" of the indictment, J.A. 35 — the count that ends by charging White with conspiracy in violation of 18 U.S.C. § 371. And the Agreement lists the maximum term of imprisonment as five years, which corresponds to a violation of 18 U.S.C. § 371.  So far, so good.  But White also "understands, agrees, and admits" that "as to Count One of the Indictment to which the Defendant is pleading guilty," the "Code section violated" is "18 U.S.C. § 13 Assimilating N.C.G.S. § 14-54" — not 18 U.S.C. § 371.  J.A. 37.  Moreover, the listed "charge" and "elements" track the state-law offense of conspiracy to commit breaking and entering, but omit the element of an overt act (which had been described on page two of the indictment), as required for a violation of 18 U.S.C. § 371 (federal conspiracy).  That inconsistency —

---

[1] The third and fourth counts of the indictment, not directly relevant here, charge White with separate federal offenses under 18 U.S.C. § 661 and § 662, related to the theft and receipt of stolen property in federal territorial jurisdictions.

5

which the Government concedes arose from a mistake in drafting the Agreement — is what has generated the confusion around this plea.

Unfortunately, that confusion did not manifest itself at White's plea colloquy, when it might have been addressed directly. At the colloquy, the district court confirmed that White was pleading guilty to Count One. It then read the charge from the indictment and informed White that Count One is a felony with a maximum punishment of five years' imprisonment. The court also summarized the other counts of the indictment, starting with Count Two, which it described as "another violation of 18 U.S.C. Section 13, assimilating North Carolina General Statute 14-54, as to breaking and entering generally." J.A. 21. At the end of the colloquy, the court accepted White's guilty plea as voluntarily entered.

At White's initial sentencing hearing, however, it became apparent that there was a dispute as to the precise charge to which White had pleaded guilty. The Probation Office's Presentence Investigation Report listed a maximum term of imprisonment of five years, tracking 18 U.S.C. § 371, and a Guidelines sentencing range of 37 to 46 months. White objected, arguing that his guilty plea was to an assimilated state conspiracy charge under 18 U.S.C. § 13 rather than to federal conspiracy under 18 U.S.C. § 371. Because the underlying state-

6

law offense carried a maximum sentence of one year or less, White contended, it constituted a misdemeanor rather than a felony for federal purposes.[2] The Government disagreed with White as to the terms of the Agreement, maintaining that White had pleaded guilty to a federal conspiracy charge under 18 U.S.C. § 371. Adding to the confusion, however, it agreed with White's alternative argument that his sentence could not exceed one year even under § 371, and that the Agreement's reference to a five-year maximum sentence was therefore erroneous. Plainly frustrated at the fundamental disagreement that had arisen, the district court noted that it had "the ability to reject the plea agreement." J.A. 49. But the district court decided instead to continue the matter so that the Government could prepare a responsive memorandum.[3]

---

[2] The ACA provides for conformity in the law governing a federal enclave and the law of the local jurisdiction, with offenders guilty of a "like offense" and subject to a "like punishment" as those who act on state property. See 18 U.S.C. § 13. Had White conspired to break and enter dwellings on state property, as opposed to Fort Bragg, in direct violation of North Carolina General Statute 14-54, he would have been guilty of a North Carolina Class I felony. See N.C. Gen. Stat. §§ 14-2.4, 14-54. According to White, the maximum sentence for his Class I felony would have been one year or less under the state sentencing law then in effect, making the offense a misdemeanor under federal law, see 18 U.S.C. § 3559(a).

[3] The Government subsequently changed its position on the latter point, arguing that White's maximum sentence under § 371 would exceed one year and thus constitute a felony under federal law. The district court ultimately agreed with the Government's

7

At the resumed sentencing hearing, the district court ruled that the parties "had mutually manifested their assent" to a plea agreement under which White pleaded guilty under 18 U.S.C. § 371, rather than 18 U.S.C. § 13. J.A. 217. Assuming that the Agreement itself was ambiguous on this point, the court held that the plea colloquy had clarified the matter in the Government's favor, confirming that White had pleaded guilty to a violation of the federal conspiracy statute. The court granted the Government's motion for downward departure and imposed a sentence of time served. A felony judgment was entered on August 15, 2014, and this timely appeal followed.

## II.

### A.

We review the district court's interpretation of the parties' plea agreement de novo. United States v. Wood, 378 F.3d 342, 348 (4th Cir. 2004). In construing a plea agreement, we rely on general contract law principles. See United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986). But given the context — the waiver of a defendant's constitutional right to

revised position, and White challenges that decision on appeal as well. Because of our disposition of this case on other grounds, we need not address that issue.

8

trial and the implications for "public confidence in the fair administration of justice" — we analyze plea agreements with special scrutiny. Id. (quoting United States v. Carter, 454 F.2d 426, 428 (4th Cir. 1972)). The result is that the law governing the interpretation of plea agreements is an "amalgam of constitutional, supervisory, and private [contract] law concerns." Id. These concerns "require holding the Government to a greater degree of responsibility than the defendant" for any imprecision in a plea agreement, so that ambiguities are construed against the Government. Id.; see also United States v. Jordan, 509 F.3d 191, 199–200 (4th Cir. 2007).

**B.**

One of contract law's fundamental doctrines is that there can be no agreement unless there is a "meeting of the minds." Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979); see Restatement (Second) of Contracts §§ 17, 20 (1981). In other words, the parties must have mutually assented to the essential elements of their bargain. Where "substantial confusion" calls into question whether there has been such a meeting of the minds over a plea bargain, there is no valid agreement to be enforced. Houmis v. United States, 558 F.2d 182, 183 (3d Cir. 1977) (vacating sentence pursuant to guilty plea in face of "doubt whether any 'meeting of the minds' ever resulted from plea negotiations"); see United States v. Bradley,

9

381 F.3d 641, 648 (7th Cir. 2004) (invalidating plea agreement and vacating judgment because there was no meeting of the minds on the nature of the charge to which the defendant pleaded).

Here, there was more than enough confusion to call into question whether the parties ever came to a meeting of the minds over the precise charge to which White was pleading guilty. Most important, while the Government appears to have believed that White was pleading guilty to federal conspiracy charges under 18 U.S.C. § 371, the Agreement in fact listed a different statute — "18 U.S.C. § 13 Assimilating N.C.G.S. § 14-54" — as the "Code section violated." So fundamental a mismatch on what is perhaps the most essential term of a plea agreement cannot help but cast doubt on whether a valid agreement exists.

The Government argues that although the Agreement nowhere references 18 U.S.C. § 371, it nevertheless makes clear, read as a whole, that White was pleading guilty to a violation of that statute. It notes that the Agreement three times cites "Count One" of the indictment as the count to which White is pleading guilty, and points as well to the Agreement's specification of five years as the maximum term of imprisonment, consistent with 18 U.S.C. § 371. We are not persuaded that these contextual clues are sufficient to override the express identification of 18 U.S.C. § 13 as the "Code section violated."

10

Though the Agreement does refer several times to "Count One," Count One of the indictment, as discussed above, itself begins by identifying a conspiracy to violate 18 U.S.C. § 13, assimilating North Carolina's breaking and entering law. Only on the second page does it conclude with a charge under 18 U.S.C. § 371. This is a complicated statutory scheme, and a layperson could be forgiven for not understanding that Count One does not charge a separate violation of 18 U.S.C. § 13. Cf. Houmis, 558 F.2d at 185 (invalidating plea agreement where layperson may not have understood its terms). Indeed, the placement of the erroneous citation to 18 U.S.C. § 13 in the Agreement compounds the confusion, suggesting that Count One does charge a violation of the Assimilative Crimes Act: section three of the Agreement provides that "as to Count One of the Indictment to which the Defendant is pleading guilty," the "Code section violated" is "18 U.S.C. § 13 Assimilating N.C.G.S. § 14-54" (emphasis added). Against all of that, the Agreement's bare reference to a five-year maximum term of imprisonment is not enough to set the record straight, especially in light of the uncertainty that arose at the sentencing hearing as to whether that provision also might be in error, even assuming a plea under 18 U.S.C. § 371.

The Government also argues, and the district court agreed, that even if the Agreement itself is ambiguous, the plea

colloquy resolved that ambiguity in its favor, establishing clearly that White pleaded guilty to a violation of 18 U.S.C. § 371. In contract law, extrinsic evidence is often used to interpret ambiguous agreements. See Glocker v. W.R. Grace & Co., 974 F.2d 540, 544 (4th Cir. 1992) ("Alleged ambiguities should be reconciled . . . by admitting relevant, extrinsic evidence."). And we have suggested before that a district court's guidance at a plea colloquy may effectively resolve ambiguities in a plea agreement. See Harvey, 791 F.2d at 303 ("[I]t might . . . be possible to establish by extrinsic evidence that the parties to an ambiguously worded plea agreement actually had agreed-or mutually manifested their assent to-an interpretation as urged by the Government."); United States v. Bryant, 436 F. App'x 254, 256–57 (4th Cir. 2011) (plea colloquy confirms defendant's interpretation of plea agreement). So perhaps under the appropriate circumstances an oral colloquy could clarify that a defendant manifested his or her assent to a statutory charge not contained within the written plea agreement. But given the fundamental nature of the error in this Agreement, combined with the rule that we construe ambiguities against the Government, we cannot be confident that the plea colloquy here resolved all ambiguities in the Government's favor.

12

We in no way find fault with the district court's colloquy, which amply met the requirements of Rule 11. Fed. R. Crim. P. 11. And it is true, as the Government argues, that the court carefully advised White that he was pleading guilty to a felony offense with a maximum sentence of five years and twice read aloud Count One of the indictment. But in reading Count One, the district court, through no shortcoming of its own, simply incorporated the same statutory complexities discussed above, referring orally to a conspiracy in violation of 18 U.S.C. § 13, assimilating North Carolina law, as well as to a charge under 18 U.S.C. § 371. And in describing Count Two, the court called it "another violation of 18 U.S.C. § 13, assimilating North Carolina General Statute 14-54," (emphasis added) inadvertently suggesting that Count One also charged a violation of 18 U.S.C. § 13 and thus lending support to White's interpretation.

To reiterate, the uncertainty in this case was not of the district court's making, and we appreciate that court's efforts to bring clarity to the situation. But there is sufficient confusion on this record that we cannot say with any assurance that the Agreement reflects a meeting of the minds on the charge to which White was pleading guilty. And in the context of a guilty plea, where fundamental constitutional rights are at stake, we must be especially vigilant in finding a meeting of the minds. Cf. Boykin v. Alabama, 395 U.S. 238, 242–43 (1969)

13

(refusing to accept defendant's guilty plea without an affirmative showing that it was made voluntarily and without ignorance of the offense charged because guilty plea waives important constitutional rights). Accordingly, we must vacate White's judgment of conviction, resting as it does on an invalid plea agreement. See Bradley, 381 F.3d at 648 (vacating judgment predicated on plea agreement that did not reflect a meeting of the minds).

For the same reason, we must deny White's request that he be resentenced, on remand, for a violation of 18 U.S.C. § 13, under the Agreement as he reads it. Where the parties have not mutually manifested their assent to the same understanding of an essential term, the result is that there simply is no valid plea agreement to be enforced. Instead, "we must discard the entire agreement and require [White] and the [G]overnment to begin their bargaining all over again." Id. (quoting United States v. Barnes, 83 F.3d 934, 941 (7th Cir. 1996)).

## III.

For the foregoing reasons, the judgment of the district court is vacated and the case is remanded for proceedings consistent with this opinion.

VACATED AND REMANDED

14